# PRETRIAL RISK ASSESSMENT IN THE FEDERAL COURT



*Sponsored by the Office of the Federal Detention Trustee with support from the Administrative Office of the U.S. Courts*

*Research conducted by:*



*Marie VanNostrand, Ph.D.*
*Gena Keebler*

| April 14, 2009 | For the Purpose of Expanding the Use of Alternatives to Detention |
| --- | --- |



**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF THE FEDERAL DETENTION TRUSTEE**

## Table of Contents

**EXECUTIVE SUMMARY** ............................................................................ 1

Background ............................................................................................ 2

Findings ................................................................................................. 5

Recommendations .................................................................................. 7

**INTRODUCTION** ...................................................................................... 8

Background ............................................................................................ 8

Purpose ................................................................................................. 9

Research Objectives ............................................................................... 10

Dataset ................................................................................................. 10

**POPULATION DESCRIPTION** ................................................................... 12

Demographics ....................................................................................... 12

Age ................................................................................................... 12

Gender ............................................................................................. 12

Race/Ethnicity .................................................................................. 12

Citizenship Status ............................................................................. 13

Education Level ................................................................................. 13

Community Stability .............................................................................. 14

Residence Status ............................................................................... 14

Length of Residence in Area ............................................................... 14

Employment Status ........................................................................... 14

Health ................................................................................................... 14

Psychiatric Treatment ........................................................................ 14

Substance Abuse Problem .................................................................. 15

Charge Information ................................................................................ 15

Criminal History .................................................................................... 16

Prior Arrests and Convictions ............................................................. 16

Pending Charges ............................................................................... 17

Prior Failure to Appear, Absconding and Escape .................................. 18

Pretrial Status ....................................................................................... 18

Pretrial Services Recommendations .................................................... 18

Court Decisions ................................................................................. 18

Pretrial Outcome ................................................................................... 19

Outcome Excluding Technical Violations ............................................. 19

Outcome Including Technical Violations .............................................. 19

**RESEARCH OBJECTIVE ONE – PRETRIAL RISK CLASSIFICATION** ............... 20

Methods and Analysis Results ................................................................ 20

Statistically Significant and Policy Relevant Predictors of Pretrial Risk ................. 20

Risk Classification Scheme ................................................................. 22

Summary of Findings and Recommendations ........................................... 24

**RESEARCH OBJECTIVE TWO – RISK LEVELS, RELEASE AND DETENTION RATES, AND PRETRIAL FAILURE RATES** .................................................................... **25**
  Methods and Analysis Results ......................................................................... 25
    Average Pretrial Risk Levels 2001–2007 ........................................................ 25
    Pretrial Release/Detention Rates and Risk Levels 2001–2007 ........................ 26
    Pretrial Failure Rates and Risk Levels 2001–2007 ........................................ 27
  Summary of Findings and Recommendations ................................................. 28

**RESEARCH OBJECTIVE THREE – ALTERNATIVES TO DETENTION, RISK LEVELS, AND PRETRIAL FAILURE** ............................................................................... **29**
  Methods and Analysis Results ......................................................................... 29
    Defendant Participation in an Alternative to Detention .................................. 29
    Alternatives to Detention Participation by Risk Level .................................... 30
    Alternatives to Detention and Pretrial Failure .............................................. 30
  Summary of Findings and Recommendations ................................................. 32

**RESEARCH OBJECTIVE FOUR – EFFICACY OF THE ALTERNATIVES TO DETENTION PROGRAM** ............................................................................................. **34**
  Methods and Analysis Results ......................................................................... 34
    Federal Criminal Justice Costs .................................................................... 34
    Efficacy of the Alternatives to Detention Program ........................................ 36
    Population Most Suited For Pretrial Release with Alternative to Detention Conditions ....... 37
  Summary of Findings and Recommendations ................................................. 38

**RESEARCH OBJECTIVE FIVE – CURRENT RISK ASSESSMENT PRACTICES** ...................... **39**
  Methods and Analysis Results ......................................................................... 39
    Statistically Significant and Policy Relevant Predictors of Pretrial Recommendations ....... 39
    Effectiveness of Current Risk Assessment Practices ...................................... 40
  Summary of Findings and Recommendations ................................................. 42

**RESEARCH OBJECTIVE SIX – BEST PRACTICES FOR PRETRIAL RISK ASSESSMENT AND RECOMMENDATIONS** ................................................................................. **44**

**APPENDIX** ......................................................................................................... **45**
  Table A1.  Prior Misdemeanor and Felony Drug Convictions .......................... 46
  Table A2.  Prior Misdemeanor and Felony Violent Convictions ....................... 46
  Table A3.  Logistic Regression Model: Pretrial Risk Factors to Predict Pretrial Outcome ...... 47
  Table A4.  Logistic Regression Model: Predicted Probability Formula ............... 48
  Table A5.  Five Risk Levels Using Predicted Probabilities ................................ 49
  Table A6.  Logistic Regression Model: Pretrial Risk Factors to Predict Pretrial Outcome Including Technical Violations ..................................................... 50
  Table A7.  Pretrial Outcome Including Technical Violations in Failure Based on Risk Level ... 51
  Table A8.  Pretrial Outcome by Type Including Technical Violations Based on Risk Level ..... 51
  Table A9.  Pretrial Failure Rates for Alternatives to Detention by Risk Level ........... 52
  Table A10.  Logistic Regression Model: Pretrial Risk Factors to Predict Pretrial Recommendation ................................................................................. 53

# Pretrial Risk Assessment in the Federal Court
## FOR THE PURPOSE OF EXPANDING THE USE OF ALTERNATIVES TO DETENTION

## EXECUTIVE SUMMARY

The mission of the Office of the Federal Detention Trustee (OFDT) is to manage and regulate the federal detention programs and the Justice Prisoner and Alien Transportation System (JPATS) by establishing a secure and effective operating environment that drives efficient and fair expenditure of appropriated funds. One of the primary responsibilities of OFDT is to review existing detention practices and develop alternatives to improve mission efficiency and cost effectiveness. OFDT and the entire justice system recognize that in some cases the most operationally-efficient and cost effective utilization of funds involves the use of alternatives to secured detention for certain defendants awaiting trial.

The Department of Justice (acting through the U.S. Marshals Service and OFDT) provides the Federal Judiciary with supplemental funding to support alternatives to pretrial detention. Alternatives to pretrial detention include, but are not limited to, third-party custodian, substance abuse testing, substance abuse treatment, location monitoring, halfway house, community housing or shelter, mental health treatment, sex offender treatment, and computer monitoring. Pretrial services agencies can recommend any of these alternatives to detention as conditions of pretrial release and the judicial officer can set one or more of the alternatives to detention as conditions of bail in lieu of secured detention.

Consistent with the mission of OFDT, the current study was sponsored by OFDT with support from the Administrative Office of the U.S. Courts. The purpose of this research effort was twofold:

- identify statistically significant and policy relevant predictors of pretrial outcome to identify federal criminal defendants who are most suited for pretrial release without jeopardizing the integrity of the judicial process or the safety of the community, in particular release predicated on participation in an alternatives to detention program; and

- develop recommendations for the use of OFDT funding that supports the Federal Judiciary's alternatives to detention program.

The study employed data provided by the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services (OPPS) that described all persons charged with criminal offenses in the federal courts between October 1, 2001 and September 30, 2007 who were processed by the federal pretrial services system (N=565,178). All federal districts with the exception of the District of Columbia were represented in the study.[1]

---

[1] The District of Columbia operates a pretrial services agency that services both Superior Court and the District Court. This agency operates independent of the federal system and no data are reported to the Administrative Office of the U.S. Courts.

The research included six primary research objectives.

1. Identify statistically significant and policy relevant predictors of pretrial risk of federal criminal defendants. Develop a classification scheme to scale the risk persons arrested for federal criminal offenses pose if released pending trial. The risk classification scheme should allow for the future development of an instrument that could be used by federal pretrial services officers to assess the risk of individual criminal defendants.

2. Examine persons charged with federal criminal offenses over the past seven (7) years and assess how the average pretrial risk level of federal criminal defendants has changed. Assess whether the change in the average risk level has resulted in changes in the pretrial release/detention rate and pretrial failure rate.

3. Examine defendants released pending trial with the condition of participation in an alternative to detention. Identify the level of pretrial risk these defendants pose and, controlling for risk level, assess whether participation in an alternative to detention mitigated the risk of pretrial failure.

4. Assess the efficacy of the alternatives to detention program at reducing federal criminal justice costs, particularly costs associated with pretrial secured detention. Identify a population most suited – both programmatically and economically – for pretrial release with conditions of alternatives to detention.

5. Examine how federal pretrial services currently assesses pretrial risk federal criminal defendants pose and the effectiveness of those practices in reducing unwarranted detention and preventing failures to appear and danger to the community while pending trial.

6. Identify "best practices" relating to the determination of pretrial risk and recommendations to release or detain a defendant pending trial, particularly as they relate to the assessment of pretrial risk and the administration of the alternatives to detention program.

## Background

Each time a person is arrested and accused of a crime a decision must be made as to whether the accused person, known as the defendant, will be released back into the community or detained in jail awaiting trial. The bail decision - to release or detain a defendant pending trial and the setting of terms and conditions of bail – is a critical part of the pretrial stage of the criminal justice system.

For the majority of our history the sole consideration when deciding bail was the risk of failure to appear in court. Until the 1960s, the Courts relied almost exclusively on the traditional surety bail system. The basic principle of the surety bail system is that a defendant can secure his/her release if he or she can arrange to have bail posted in an amount set by the judicial officer.[2] This system allows a person accused of a crime to remain free pending trial by posting security – property or money – to ensure that he will stand trial and submit to a sentence if found guilty. The release of defendants pending trial is consistent with the presumption of innocence and the Eighth Amendment

---

[2] National Institute of Justice, *Pretrial Services Programs: Responsibilities and Potential* (Washington, D.C.: U.S. Department of Justice, U.S. Government Printing Office, 2001) p. 7

right against excessive bail, it permits the defendant to more fully assist in the preparation of his defense, and it reduces the possibility that the defendant might be detained for a longer period than would otherwise be appropriate if convicted of the accused offense.

The first major federal bail reform since the Judiciary Act of 1789 occurred in the form of the Bail Reform Act of 1966. The Act reinforced that the sole purpose of bail was to assure court appearance and that the law favors release pending trial. In addition, the Act established a presumption of release by the least restrictive conditions with an emphasis on non-monetary terms of bail. The de-emphasis on the use of surety bail as a pretrial release requirement, consistent with the Eight Amendment, prohibits the imposition of excessive bail that would, by default, result in the defendant's detention.[3] Based on this standard of presumptive release, federal criminal defendants were generally released on their personal recognizance or an unsecured bond pending trial.

By the late 1970s, however, a noticeable shift in the perceived functions of bail had emerged. There was growing concern over the need to protect the community from the potential danger posed by the defendant awaiting trial in the community. Accordingly, the Bail Reform Act of 1984 granted the federal courts the authority to detain criminal defendants for preventative purposes.[4] Whereas the 1966 Act generally required the defendant's release, the 1984 Act permits pretrial detention for the purposes of protecting the community from any danger that the defendant may pose. Specifically, the Bail Reform Act of 1984 permits the federal courts to base pretrial release decisions on (1) the risk of pretrial flight the defendant poses, and (2) the potential threat the defendant poses to the community or to specific individuals including the likelihood that the defendant would commit new crimes while on release. For defendants charged with certain offenses, the 1984 Act presumes that pretrial detention would be required; whereas the government must normally demonstrate why pretrial detention is required, these defendants must demonstrate why pretrial release is justified.[5]

Additionally, the Bail Reform Act of 1984 identified several factors that the federal courts should consider when making pretrial release/detention decisions. The factors specified by the Act are: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the financial resources of the defendant, (4) the character and physical and mental condition of the defendant, (5) family ties, (6) employment status, (7) community ties and length of residency in the community, (8) record of appearances at court proceedings, (9) prior convictions, (10) whether, at the time of the current offense, the defendant was under criminal justice supervision, and (11) the nature and seriousness of the danger to the community or any person that the defendant's release would pose.[6]

At the time the Bail Reform Act of 1984 was enacted, the U.S. Attorneys were primarily focused on prosecuting fraud, regulatory, and other offenses that occurred within the original jurisdiction of the federal government. For example, during 1985, nearly a third of suspects considered for prosecution by U.S. Attorneys were involved with a fraud offense, 11% a regulatory-type offense, and 8% an immigration offense.[7] Less than 20% were involved with drugs and 7% with a violent offense.

---

[3] See, PUB. L. 89-465, 80 Stat. 214 (1965).

[4] PUB. L. 94-473, 98 Stat. 1976 (1984).

[5] Title 18, United States Code, Section 3142(e) (which presumes that for defendants charged with a drug trafficking or importation offense with a maximum statutory penalty of 10 years or more, using a weapon in conjunction with a violent crime or drug offenses, or a terrorism offense no condition or combination of conditions can reasonably ensure the defendant's appearance at trial or the safety of the community).

[6] Title 18, United States Code, Section 3142(f).

[7] Bureau of Justice Statistics. COMPENDIUM OF FEDERAL JUSTICE STATISTICS, 1985 (July 1990).

Accordingly, the impact of the increased flexibility to detain criminal defendants that the 1984 Act provided the judiciary was limited. During 1984, the average daily detention population was approximately 5,400. However, with the advent of the "War on Drugs" during the late 1980s and the increased enforcement of immigration laws during the 1990s, the number of persons prosecuted for drug, weapon, and immigration offenses substantially increased. During 2007, the number of suspects referred to U.S. Attorneys for drug offenses doubled to approximately 36,000; the number of felony immigration offenses increased more than five-fold to approximately 38,000; and the number of weapons offenses increased more than three-fold to approximately 12,000.[8] As a result of the change in enforcement priorities, between 1985 and 2007 the average daily detention population had increased ten-fold to more than 56,000.[9]

Since the implementation of the Bail Reform Act of 1984, increased emphasis has been placed on developing and implementing alternatives to secured detention that would mitigate the risk of flight and danger to the community and provide some relief for pretrial detention. For example, various forms of home confinement have increasingly gained acceptance within the criminal justice community – at both the State and Federal levels – as credible alternatives to pretrial detention.[10] With the advent of technologies to monitor the defendant's location, electronic monitoring has also gained acceptance as a tool for monitoring the defendant's compliance with the home confinement alternative. Other alternatives currently approved by the Federal Judiciary include:

- *third-party custody*, whereby the defendant is designated to the custody of a person who agrees to assume responsibility for supervision and report violations to the court;
- *halfway house placement*, whereby the defendant is designated to a community-based residential facility and may leave the facility for approved purposes (such as employment, education, medical treatment, and religious practices);
- *intermittent custody*, whereby the defendant is released from detention for limited time periods (such as employment and education);
- *substance abuse treatment*, whereby the defendant is required to participate in a drug or alcohol dependency program and/or to submit to a period of drug testing; and
- *mental health treatment*, whereby the defendant is required to undergo psychological or psychiatric treatment to reduce the risk of nonappearance and/or danger to the community associated with his emotional or mental health.[11]

---

[8] During 2007 an additional 27,000 persons were booked and prosecuted for a misdemeanor immigration offense.
[9] Bureau of Justice Statistics. Federal Justice Statistics Program Website (http://fjsrc.urban.org). Executive Office for U.S. Attorneys, LIONS data system, Fiscal Year 2007 (as standardized by the FJSRC)."
[10] *See, e.g.,* Daren Gowen, *Overview of the Federal Home Confinement Program*, 64 FEDERAL PROBATION 11 (2000). Home confinement is interpreted by the Federal Judiciary to include curfew (whereby the defendant is prohibited from leaving his residence during specific hours), home detention (whereby the defendant is restricted to his residence at all times except for approved leaves such as for employment, education, medical treatment, and religious practices), and home incarceration (whereby the defendant is restricted to his residence at all times except for approved absences, medical treatment, or religious practice).
[11] Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, THE SUPERVISION OF FEDERAL DEFENDANTS. Monograph 111 (September 2004). Other alternatives to detention include sex offender treatment and computer monitoring. However, given the types of offenses for which persons are federally prosecuted, these conditions are infrequently imposed: 0.4% of persons included in the study were released pending trial to a sex offender treatment program; and 1.5% percent was required to have their computer usage monitored.

# Findings

The study focused on persons charged with a federal criminal offense and processed by federal pretrial services between 2001 and 2007. During this time the pretrial detention rate increased from 53 percent of persons charged with a federal offense to 64 percent; similarly, the detention population increased from an average daily population of approximately 37,000 to 56,000.[12] Approximately 60 percent of the increase in the detention rate is directly attributable to the greater number of defendants identified as higher risk of failing if released pending trial. During the study period, the cohorts of defendants prosecuted have increasingly become higher risk thereby necessitating a higher rate of pretrial detention. Most notably, during 2001 (the first observation year), 16 percent of defendants prosecuted were classified at the highest risk level. By contrast, during 2007 the proportion of defendants classified at the highest risk level increased to 23 percent.

One of the objectives of the study was to develop a risk classification scheme to scale the risk persons arrested for federal criminal offenses pose if released pending trial. The classification scheme developed as part of the study is based on nine factors, consistent with those factors identified in the Bail Reform Act of 1984, that have been demonstrated in this and other studies to be statistically significant predictors of pretrial risk for both federal and state criminal defendants. The nine predictors are: (1) whether there were other charges pending against the defendant at the time of arrest, (2) the number of prior misdemeanor arrests, (3) the number of prior felony arrests, (4) the number of prior failures to appear, (5) whether the defendant was employed at the time of the arrest, (6) the defendant's residency status, (7) whether the defendant suffered from substance abuse problems, (8) the nature of the primary charge, and (9) whether the primary charge was a misdemeanor or a felony.

Using the data the Administrative Office of the U.S. Courts-OPPS, statistical models were created and used to develop a classification scheme and assign "weights" to the nine factors included in the model. Defendants classified at the low end of the scale were deemed to pose the least risk for pretrial failure whereas defendants at the high end posed the greatest risk (on a scale of 1 to 5). When applied to the population of defendants released between 2001 and 2007, the data indicate the risk classification scheme mimics judicial practice: as risk increased, the likelihood of pretrial detention increased from 13 percent of defendants classified as level 1 (the lowest risk) to 72% of those classified as level 5 (the highest risk). Similarly, when defendants were released, the likelihood of pretrial failure increased as the level of pretrial risk increased. For example, two percent of defendants classified in the lowest risk category failed their pretrial release whereas more than 10 percent of those classified in the higher risk categories failed: 12 percent of defendants classified as a level 4 risk and 16 percent of those classified as level 5. Further, while the likelihood of failing to appear for court appearances varied by risk level (1.4% to 5.7%), defendants classified at the higher risk levels were substantially more likely to pose a danger to the community by committing new crimes (0.9% to 9.8%).

Given the increased risk of pretrial failure that federal criminal defendants pose, it is critical to identify the steps that could be taken by the federal courts to further the goals of (1) ensuring the

---

[12] Bureau of Justice Statistics. Federal Justice Statistics Program Website (http://fjsrc.urban.org). Executive Office for U.S. Attorneys, LIONS data system, Fiscal Year 2007 (as standardized by the FJSRC)."

least restrictive conditions necessary are imposed pretrial to ensure the defendant's appearance at trial and the safety of the community, and (2) reduce the burden of pretrial detention by detaining only those defendants for which pretrial detention is unequivocally required. Since implementation of the Bail Reform Act of 1984, efforts have been dedicated to developing and implementing alternatives to secured detention that would mitigate pretrial risk and permit defendants – who might otherwise be detained – to be released into the community pending trial. While approximately 60 percent of defendants prosecuted during the study period were ordered detained pending trial, of those released, conditions that included at least one alternative to detention were required for nearly three-quarters. Most of those participating in the alternatives to detention program were required to submit to drug testing (60%) or a substance abuse treatment program (35%). Additionally, 17% participated in the location monitoring program and 10% had a third-party custodian.

Participation in the alternatives to detention program was most often required of those defendants who posed the greatest pretrial risk: 84 percent of risk level 3, 92 percent of risk level 4 and 96 percent of risk level 5 defendants who were released pending trial participated in the alternatives to detention program. These moderate to high risk defendants who were released to the alternatives to detention program were less likely to experience pretrial failure when compared to defendants released without a condition that included an alternative to detention. Paradoxically, when required of lower risk defendants, *i.e.,* risk levels 1 and 2, release conditions that included alternatives to detention were more likely to result in pretrial failure. These defendants were, in effect, over supervised given their risk level.[13]

Assessing the efficacy of the alternatives to detention program included considerations of cost while attempting to strike the proper balance between the rights of the defendant with the need to assure court appearance and safety of the community pending trial. When considering cost alone, the average savings per defendant released pending trial to the ATD program in lieu of detention is substantial. The average cost of pretrial detention is approximately $19,000 per defendant. By contrast, the average cost of pretrial release that includes alternatives to detention is between $3,100 and $4,600, depending upon the defendant's risk level.[14]

Accordingly, throughout the duration of the Department of Justice-Administrative Office of the U.S. Courts alternative to detention reimbursement program, the program has resulted in financial efficiencies for the secured detention program. For example, during 2007, the Federal Judiciary utilized approximately $2.4 million of funding provided by the Department of Justice (acting through the Office of the Federal Detention Trustee) to supplement their funding for alternatives to detention. This funding was used to fund alternatives to detention for 3,226 defendants released pending trial. Had these defendants been ordered detained, the Department of Justice would have incurred additional costs for detention housing of approximately $38 million. Additionally, considering the scarcity of secured detention resources, an additional 1,500 additional detention beds would have been occupied throughout the year.

---

[13] This observation is valid for all alternatives to detention with the exception of mental health treatment. Mental health treatment was equally effective at reducing pretrial failure for all risk levels.
[14] The cost of pretrial release was based on the cost of supervision, the average cost of alternatives to detention, and the average cost of fugitive recovery given the probability of failure.

## Recommendations

The results of this study should be utilized to develop a standardized empirically-based risk assessment instrument to be used by federal pretrial services. The use of a standardized instrument will assist in reducing the disparity in risk assessment practices and provide a foundation for evidence-based practices relating to release and detention recommendations and the administration of the alternatives to detention program. Further, it will allow for the development of policy that provides guidance to pretrial services agencies regarding release and detention recommendations including the use of the alternatives to detention program. Any policy developed should reflect the following principles.

- Lower risk defendants are the most likely to succeed if released pending trial. Release conditions that include alternatives to detention – with the exception of mental health treatment, when appropriate – generally decrease the likelihood of success for lower risk defendants and should be required sparingly.

- The alternatives to detention program is most appropriate for moderate and higher risk defendants as it allows for pretrial release while generally increasing pretrial success. Alternatives to detention should be recommended for this population when a defendant presents a specific risk of pretrial failure that can be addressed by a specific alternative.

- Defendants in risk levels 3 and 4 are the most suited for pretrial release – both programmatically and economically – with conditions of alternatives to detention. The pretrial release of these defendants can be maximized by minimizing the likelihood of pretrial failure through participation in an alternatives to detention program.

- Pretrial release with conditions that include alternatives to detention is consistent with the purpose and intent of the federal bail reform legislation; and it strikes an appropriate balance between the legal and constitutional rights of defendants with the need to protect the community and assure court appearance pending trial.

# INTRODUCTION

## Background

The bail decision, to release or detain a defendant pending trial and the setting of terms and conditions of bail, is a monumental task which carries enormous consequences not only for the pretrial defendant but also for the safety of the community, the integrity of the judicial process, and the utilization of our often overtaxed criminal justice resources.  The bail decision is made by a judicial officer.  Bail, as it stands today in the federal court system, serves to provide assurance that the defendant will appear for court and not be a danger to the community pending trial. There remains a legal presumption of release on the least restrictive terms and conditions,[15] with an emphasis on non-financial terms, unless the Court determines that no condition or combination of conditions will reasonably assure the appearance of the person in court and the safety of any other person and the community. [16]

Pretrial services agencies perform critical functions related to the bail decision.  They provide information via investigations and reports to judicial officers to assist them in making the most appropriate bail decision.  The information provided to judicial officers includes, but is not limited to, the areas specified in the statute as follows:  (1) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.[17]

Pretrial services agencies also provide supervision of defendants released with conditions pending trial.  Conditions of supervision can relate to the following: employment; education; restrictions on travel, residence, and associations; refrain from use of alcohol or other drugs; undergo medical, psychological, or psychiatric treatment; and other conditions deemed appropriate by a judicial officer.[18]

The Pretrial Services Act of 1982 authorized the implementation of pretrial services nationwide with a primary purpose of reducing unnecessary pretrial detention.  The Administrative Office of the United States Courts – Office of Probation and Pretrial Services (OPPS) support the probation and pretrial

---

[15] Title 18, United States Code, Section 3142(c)(1)(B)

[16] Title 18, United States Code, Section 3142(e) contains three categories of criminal offenses that give rise to a rebuttable presumption that "no condition or combination of conditions" will (1) "reasonably assure" the safety of any other person and the community if the defendant is released; or (2) "reasonably assure" the appearance of the defendant as required *and* "reasonably assure" the safety of any other person and the community if the defendant is released.

[17] Title 18, United States Code, Section 3142(g)

[18] An illustrative list of conditions is set forth in Title 18, United States Code, Section 3142 (c)(1)(B)(i through xiv) which gives the judicial officer authority to impose conditions not specifically enumerated so long as the same serve the purposes set out in § 3142(c)(1)(B)

services system, including developing system policies, supporting system programs, and reviewing the work of probation and pretrial services offices.

The mission of the Office of the Federal Detention Trustee (OFDT) is to manage and regulate the federal detention programs and the Justice Prisoner and Alien Transportation System (JPATS) by establishing a secure and effective operating environment that drives efficient and fair expenditure of appropriated funds.  One of the primary responsibilities of OFDT is to review existing detention practices and develop alternatives to improve mission efficiency and cost effectiveness.  OFDT and the entire justice system recognize that in some cases the most operationally-efficient and cost effective utilization of funds involves the use of alternatives to secured detention for certain defendants awaiting trial.

Consistent with the concept of pretrial justice[19] and U.S. Code Title 18, Part II, Chapter 207, § 3142 Release or Detention of a Defendant Pending Trial, the Department of Justice (acting through the U.S. Marshals Service and OFDT) provides the Federal Judiciary with supplemental funding to support alternatives to pretrial detention. Alternatives to pretrial detention include, but are not limited to, third-party custodian, substance abuse testing, substance abuse treatment, location monitoring, halfway house, community housing or shelter, mental health treatment, sex offender treatment, and computer monitoring.  Pretrial services agencies can recommend any of these alternatives to detention as conditions of pretrial release and judicial officers can set one or more of the alternatives to detention as conditions of bail in lieu of secured detention.

> *Pretrial Justice - The honoring of the presumption of innocence, the right to bail that is not excessive, and all other legal and constitutional rights afforded to accused persons awaiting trial while balancing these individual rights with the need to protect the community, maintain the integrity of the judicial process, and assure court appearance*

## Purpose

The purpose of this research effort is twofold:

- ◆ identify statistically significant and policy relevant predictors of pretrial outcome to identify federal criminal defendants who are most suited for pretrial release without jeopardizing the integrity of the judicial process or the safety of the community, in particular release predicated on participation in an alternatives to detention program; and

- ◆ develop recommendations for the use of OFDT funding that supports the Federal Judiciary's alternatives to detention program.

---

[19] VanNostrand, Marie and Gena Keebler. "Our Journey Toward Pretrial Justice" in *Federal Probation*, Volume 71, Number 2, (September 2007) pp. 20-25.

## Research Objectives

The report is organized by the six primary research objectives.

1. Research Objective One – Pretrial Risk Classification: Identify statistically significant and policy relevant predictors of pretrial risk of federal criminal defendants. Develop a classification scheme to scale the risk persons arrested for federal criminal offenses pose if released pending trial. The risk classification scheme should allow for the future development of an instrument that could be used by federal pretrial services officers to assess the risk of individual criminal defendants.

2. Research Objective Two – Risk Levels, Release and Detention Rates, and Pretrial Failure Rates: Examine persons charged with federal criminal offenses over the past seven (7) years and assess how the average pretrial risk level of federal criminal defendants has changed. Assess whether the change in the average risk level has resulted in changes in the pretrial release/detention rate and pretrial failure rate.

3. Research Objective Three – Alternatives to Detention, Risk Levels, and Pretrial Failure: Examine defendants released pending trial with the condition of participation in an alternative to detention. Identify the level of pretrial risk these defendants pose and, controlling for risk level, assess whether participation in an alternative to detention mitigated the risk of pretrial failure.

4. Research Objective Four – Efficacy of the Alternatives to Detention Program: Assess the efficacy of the alternatives to detention program at reducing federal criminal justice costs, particularly costs associated with pretrial secured detention. Identify a population most suited – both programmatically and economically – for pretrial release with conditions of alternatives to detention.

5. Research Objective Five – Current Risk Assessment Practices: Examine how federal pretrial services currently assesses pretrial risk federal criminal defendants pose and the effectiveness of those practices in reducing unwarranted detention and preventing failures to appear and danger to the community while pending trial.

6. Research Objective Six – Best Practices for Pretrial Risk Assessment and Recommendations: Identify "best practices" relating to the determination of pretrial risk and recommendations to release or detain a defendant pending trial, particularly as they relate to the assessment of pretrial risk and the administration of the alternatives to detention program.

## Dataset

The dataset used to conduct this study was provided by the Administrative Office of the United States Courts – Office of Probation and Pretrial Services (OPPS). The dataset was extracted from the Probation and Pretrial Services Automation and Case Tracking System (PACTS) in June 2008 and consists of all persons charged with criminal offenses in the federal courts between October 1, 2001 and September 30, 2007 (FY2001 – FY 2007) who were processed by the federal pretrial services system. The dataset includes defendants who entered the pretrial services system via a complaint,

indictment, information, or superceding indictment/information (all others, such as material witness and writs, were excluded). There are 94 federal judicial districts, including at least one district in each state, the District of Columbia and Puerto Rico. Three territories of the United States – the Virgin Islands, Guam, and the Northern Mariana Islands – also have district courts that hear federal cases. The data represents all of the federal districts with the exception of the District of Columbia (93 of 94) and includes 565,178 defendant records.

# POPULATION DESCRIPTION

## Demographics

### Age

The average age of defendants processed by pretrial services was 34 years old while the most common age was 26 years old. Twenty-six percent of all defendants were 25 years old and younger, 27% were between 26 and 32 years old, 23% were between 33 and 40 years old, and 24 % were 41 years old or older. Nearly all (99.7%) of defendants were adults while less than 1% were juveniles.

### Gender

Men made up on average 85% of all defendants processed by pretrial services, conversely, women made up 15% of the population.

### Race/Ethnicity

Forty-four percent of all defendants race/ethnicity was White Hispanic. The race/ethnicity of the remaining defendants was as follows: White non-Hispanic 27%, Black non-Hispanic 23% and Asian, Native American, and Black-Hispanic approximately 2% respectively.

**Figure 1. Race/Ethnicity of all Defendants Processed by Pretrial Services**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

## Citizenship Status

The citizenship status of defendants was as follows: 62% U.S. Citizens, 31% Illegal Alien, and 7% Legal Alien. As can be seen in figure 2, the citizenship status of defendants varied between 2001 and 2007. While the percent of Legal Aliens remained relatively constant, the percent of defendants whose citizenship status was U.S. Citizen decreased by 7% from 66% in 2001 to 59% in 2007.

**Figure 2. Citizenship Status of Defendants 2001 – 2007**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

## Education Level

The education levels for the defendants can be found in figure 3.

**Figure 3. Defendant Education Levels**

| Education Level | Percent |
|---|---|
| College degree or higher | 7.8 |
| Some college | 17.6 |
| High school/GED/trade school | 33.2 |
| Some high school | 27.8 |
| None to eighth grade | 13.6 |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

## Community Stability

### Residence Status

Thirty-seven percent of defendants were renting a residence, 20% owned or were buying their home (had a mortgage on their home), 24% had a place to live but made no financial contribution toward the residence, and 17% had an "other" residence status.  Nearly 2% of all defendants were essentially homeless with no place to live at the time of their initial appearance.

### Length of Residence in Area

At the time of their initial appearance, 43% of all defendants lived in the area for less than one year, 18% for between 1 to 5 years, 6% between 6 to 10 years, and approximately 1/3rd (33%) had lived in the area for 11 or more years.

### Employment Status

The employment status of defendants varied across years and ranged from 56% to 49% employed at the time of the initial appearance with an average of 52% of defendants employed between FY 2001 and FY 2007.  The corresponding figure demonstrates the fluctuation in employment rates.

**Figure 4.  Defendants Employed at Initial Appearance 2001 – 2007**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System).  All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity.  Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

## Health

### Psychiatric Treatment

Approximately 9% of all defendants had received psychiatric treatment at some time during the two years prior to the initial appearance.  The rate gradually increased from 8% in 2001 to 11% in 2007.

**Substance Abuse Problem**

On average, 51% of all defendants were determined to have a substance abuse problem at the time of the initial appearance. The most frequently abused drugs were Cannabis (40%), followed by Alcohol (25%), Narcotics (23%), Stimulants (9%) and another drug (3%).

**Figure 5. Substance Abuse Problem Type**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

The substance abuse type categories are based on the Substance Abuse and Mental Health Services Administrations National Clearinghouse for Alcohol and Drug Information report 926 which can be found at http://ncadi.samhsa.gov/govpubs/rpo926/

## Charge Information

Defendants' primary charge was a felony 92% of the time, a misdemeanor 7%, and an infraction 1%. There were few fluctuations in the percent of charge offense level across the years.

The most common primary charges for defendants were drug related offenses (36%). Approximately 26% of all defendants were charged with immigration law violations followed by theft and fraud related offenses 17%, firearm offenses 9%, violent offenses 5.5%, and other offenses 7.5%. The primary charge percentages varied across the years. Notably, immigration law violations increased from 20% in 2001 to 29% in 2007 while drug related offense decreased from 40% in 2001 to 33% in 2007 (see figure 6).

**Figure 6. Primary Charge Type**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

## Criminal History

### Prior Arrests and Convictions

Forty-four percent of defendants had not previously been arrested for a felony and 57% had not previously been convicted of a felony (see figure 7).

**Figure 7. Prior Felony Arrests and Convictions**

|  | Felony Arrests | Felony Convictions |
|---|---|---|
| **None** | 44.4% | 57.4% |
| **One** | 16.5% | 17.6% |
| **Two or more** | 39.1% | 25.0% |
| **Total** | 100% | 100% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

Forty-two percent of defendants had not previously been arrested for a misdemeanor and 55% had not previously been convicted of a misdemeanor (see figure 8).

**Figure 8. Prior Misdemeanor Arrests and Convictions**

|  | Misdemeanor Arrests | Misdemeanor Convictions |
|---|---|---|
| **None** | 41.8% | 55.4% |
| **One** | 14.9% | 16.2% |
| **Two** | 9.8% | 9.1% |
| **Three** | 7.0% | 5.6% |
| **Four** | 5.2% | 3.6% |
| **Five or more** | 21.3% | 10.0% |
| **Total** | 100% | 100% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

More detailed information about prior drug and violent misdemeanor and felony convictions can be found in Appendix Tables A1 & A2.

**Pending Charges**

Eighteen percent of all defendants had a misdemeanor or felony pending in court at the time of their arrest. The percentages of defendants who had misdemeanor and felony charges pending in court at the time of their arrest are provided in figure 9.

**Figure 9. Misdemeanor and Felony Pending Charges**

|  | Pending Misdemeanor | Pending Felony |
|---|---|---|
| **None** | 91.9% | 87.1% |
| **One** | 5.5% | 9.2% |
| **Two or more** | 2.6% | 3.8% |
| **Total** | 100% | 100% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

**Prior Failure to Appear, Absconding and Escape**

Eighty-four percent of all defendants had never failed to appear in court, 7% had one prior failure to appear and 9% had two or more failures to appear in court. Three percent of the defendants had previously absconded from some form of criminal justice supervision while 2% had previously escaped from custody.

## Pretrial Status

**Pretrial Services Recommendations**

Pretrial services recommended detention for defendants an average of 61% of the time between 2001 and 2007. The recommendations for detention by pretrial services increased from 56% of all defendants in 2001 to 64% in 2007.

**Court Decisions**

Similar to the trend indentified in pretrial services recommendations, detention rates have increased steadily over the years while release rates have simultaneously decreased. As can be seen in figure 10, detention increased from 53% of all defendants in 2001 to 64% in 2007.

**Figure 10. Pretrial Release and Detention Rates 2001 – 1007**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

## Pretrial Outcome

Pretrial outcome is the success or failure of a defendant released pending trial. The purpose of bail is to assure court appearance and the safety of the community during the pretrial stage. Failure to appear was measured by a defendant's failure to appear for a scheduled court appearance or absconding from pretrial supervision while pending trial. Danger to the community was measured by a bail revocation due to a new arrest for a crime that was allegedly committed while the defendant was released pending trial.

There are two common definitions of pretrial failure.

1. <u>Excluding technical violations</u> – Defendants who were deemed to have failed to appear and/or to have been a danger to the community pending trial are classified "failure" and those defendants who experienced neither and remained in the community during the entire time pending trial are classified "successful". Note that in this definition defendants who had their bail revoked for violating technical conditions (reasons other than failing to appear or danger to community) or other reasons do not meet either of these categories and are excluded.

> PRETRIAL OUTCOME IS THE SUCCESS OR FAILURE OF A DEFENDANT RELEASED PENDING CASE DISPOSITION
>
> THERE ARE TWO COMMON DEFINITIONS OF PRETRIAL FAILURE – ONE INCLUDING AND ONE EXCLUDING TECHNICAL VIOLATIONS OF BAIL CONDITIONS

2. <u>Including technical violations</u> – Defendants who were deemed to have failed to appear, been a danger to the community, or had their bail revoked for technical violations pending trial are classified "failure" and those defendants who experienced none of these and remained in the community during the entire time pending trial are classified "successful".

There is a utility for both of these definitions which will be discussed in more detail in the next section. For this reason, the outcomes are provided here for each definition.

### Outcome Excluding Technical Violations

Defendants released pending trial had a 93% success rate (failure to appear 3.5% and danger to community 3.5%). These rates remained relatively constant across the years.

### Outcome Including Technical Violations

Defendants released pending trial had an 87.4% success rate (failure to appear 3.4%, danger to community 3.2%, and technical violations 6%). These rates remained relatively constant across the years.

## RESEARCH OBJECTIVE ONE – PRETRIAL RISK CLASSIFICATION

*Identify statistically significant and policy relevant predictors of pretrial risk of federal criminal defendants. Develop a classification scheme to scale the risk persons arrested for federal criminal offenses pose if released pending trial. The risk classification scheme should allow for the future development of an instrument that could be used by federal pretrial services officers to assess the risk of individual criminal defendants.*

### Methods and Analysis Results

**Statistically Significant and Policy Relevant Predictors of Pretrial Risk**

The first step to answering this research objective was to identify the statistically significant and policy relevant predictors of pretrial risk of federal criminal defendants. Pretrial risk is the likelihood that a defendant will succeed or fail if released pending trial. For the purposes of this research and consistent with the intent of bail, pretrial failure is defined as failing to appear for court and/or being a danger to the community pending trial. Failure to appear was measured by a defendant's failure to appear for a scheduled court appearance or absconding from pretrial supervision while pending trial. Danger to the community was measured by the presence of a bail revocation due to a new arrest for a crime that was allegedly committed while the defendant was released pending trial. Defendants who were deemed to have failed to appear and/or to have been a danger to the community pending trial were classified "failure" and those defendants who experienced neither and remained in the community during the entire time pending trial were classified "successful". It should be noted that defendants who had their bail revoked for violating technical conditions or other reasons were omitted from this analysis.

> *Pretrial failure is defined as failing to appear for court and/or being a danger to the community pending trial*

The analysis consisted of univariate, bivariate, and multivariate analysis. The univariate analysis including descriptive statistics of the dependent variable (pretrial outcome: success or failure pending trial) and each independent variable (risk factor). The bivariate analysis included an examination of the relationship between each risk factor and pretrial outcome. The risk factors found to be statistically significantly related to pretrial outcome were identified and used to conduct the multivariate analysis.

Logistic regression was the multivariate analysis technique used to identify the statistically significant and policy relevant predictors of pretrial risk of federal criminal defendants. A logistic regression model was built using cross validation to confirm the replicability and generalizability of the results. Because some risk factors are considered more policy relevant based on bail considerations as outlined in statute, the model was built using a hierarchical approach by entering the statistically significant risk factors within a block of variables in order of policy relevance. The order included the risk factors that measure criminal history, community stability, health, and charge information. See Appendix Table A3 for the logistic regression model to predict pretrial outcome.

The analysis identified nine (9) statistically significant and policy relevant predictors of pretrial outcome – success or failure pending trial.

1. *Pending Charges* – Defendants who had one or more misdemeanor or felony charges pending at the time of arrest were 20% more likely to fail pending trial when compared to defendants who did not have a pending charge.

2. *Prior Misdemeanor Arrests* – Defendants with prior misdemeanor arrests were more likely to fail pending trial when compared to defendants who did not have prior misdemeanor arrests: one prior misdemeanor arrest (13% more likely); two prior misdemeanor arrests (32% more likely); three prior misdemeanor arrests (45% more likely); four misdemeanor arrests (59% more likely); and five or more prior misdemeanor arrests (69% more likely).

3. *Prior Felony Arrests* – Defendants with prior felony arrests were more likely to fail pending trial when compared to defendants who did not have prior felony arrests: one prior felony arrest (22% more likely) and two or more prior felony arrests (38% more likely).

4. *Prior Failures to Appear* – Defendants with prior failures to appear in court were more likely to fail pending trial when compared to defendants who did not have a prior failure to appear in court: one prior failure to appear (22% more likely) and two or more prior failures to appear (35% more likely).

5. *Employment Status* – Defendants who were unemployed at the time of their arrest were 21% more likely to fail pending trial when compared to defendants who were employed.

6. *Residence Status* – Defendants who did not own or were not buying their residence were more likely to fail pending trial when compared to defendants who did own or were buying their residence had a mortgage on their home): renting (65% more likely); making no financial contribution to residence (74% more likely); no residence/place to live (2.1 times or 110% more likely); and another type of residence (48% more likely).

7. *Substance Abuse Type* – Defendants who abused alcohol (21%), cannabis (23%), and narcotics (40%) were more likely to fail pending trial when compared to defendants who did not abuse any substances.

8. *Primary Charge Category* – Defendants charged with a felony were 61% more likely to fail pending trial when compared to defendants who were charged with a misdemeanor or infraction.

9. *Primary Charge Type* – When compared to defendants charged with a theft or fraud related offense, defendants charged with a firearm offense (51%), a drug offense (78%), and an immigration law violation (78%) were more likely to fail pending trial. There was no statistically significant difference between defendants charged with a violent offense or another offense when compared to defendants charged with a theft or fraud offense.

> *The statistically significant and policy relevant predictors of pretrial failure include –*
>
> ✓ *Pending Charges*
> ✓ *Prior Misdemeanor Arrests*
> ✓ *Prior Felony Arrests*
> ✓ *Prior Failures to Appear*
> ✓ *Employment Status*
> ✓ *Residence Status*
> ✓ *Substance Abuse Type*
> ✓ *Primary Charge Category*
> ✓ *Primary Charge Type*

## Risk Classification Scheme

The next step to answering this research objective was to develop a classification scheme to scale the risk persons arrested for federal criminal offenses pose if released pending trial. The results of the logistic regression model, including the nine statistically significant and policy relevant predictors of pretrial failure and related output, were used to create a pretrial risk classification scheme to scale the risk persons arrested for federal criminal offenses pose if released pending trial.

A formula was created which uses the logistic regression results to generate a predicted probability for each defendant (see Appendix Table A4). Predicted probabilities range from 0 to 1 and can be interpreted as the percent chance of pretrial failure if released pending trial. The predicted probabilities were used to create five (5) risk levels by identifying the 20th percentiles (see Appendix Table A5). Each defendant was then classified into one of five levels of risk based on the assigned predicted probability. The following figure shows the pretrial outcome for all defendants when considering the risk levels.

**Figure 11. Pretrial Outcome Based on Risk Level**

| | | Pretrial Outcome | | |
|---|---|---|---|---|
| | | Successful | Failure | Total |
| Risk level 1 | Count | 58059 | 1337 | 59396 |
| | Percent | 97.7% | 2.3% | 100.0% |
| Risk level 2 | Count | 38750 | 2463 | 41213 |
| | Percent | 94.0% | 6.0% | 100.0% |
| Risk level 3 | Count | 28580 | 2909 | 31489 |
| | Percent | 90.8% | 9.2% | 100.0% |
| Risk level 4 | Count | 21483 | 2864 | 24347 |
| | Percent | 88.2% | 11.8% | 100.0% |
| Risk level 5 | Count | 13584 | 2486 | 16070 |
| | Percent | 84.5% | 15.5% | 100.0% |
| Total | Count | 160456 | 12059 | 172515 |
| | Percent | 93.0% | 7.0% | 100.0% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

Note: Excludes defendants who had their bail revoked for violating technical conditions of release. These defendants represent approximately 6% of the total pretrial release population during the study period.

The average pretrial failure rate for all released defendants was 7%. As shown in the figure above, the average pretrial failure rate for defendants released pending trial ranged by risk level from 2.3% to 15.5% as follows: level 1 (2.3%), level 2 (6%), level 3 (9.2%), level 4 (11.8%), and level 5 (15.5%).

It is also important to disaggregate the failure by type – failure to appear in court and danger to the community. Additional analysis was completed to identify the rates of both failure to appear in court (measured by a defendant's failure to appear for a scheduled court appearance or absconding from pretrial supervision while pending trial) and danger to the community (measured by the presence of bail violation due to a new arrest for a crime that was allegedly committed while the defendant was released pending trial). As can be seen in figure 12 below, the higher the risk level the higher the average pretrial failure rates for both danger to the community and failure to appear.

**Figure 12. Pretrial Outcome by Type Based on Risk Level**

| | | Pretrial Outcome | | | |
|---|---|---|---|---|---|
| | | **Successful** | **Danger to Community** | **Failure to Appear** | **Total** |
| **Risk level 1** | Count | 58059 | 516 | 821 | 59396 |
| | Percent | 97.7% | .9% | 1.4% | 100.0% |
| **Risk level 2** | Count | 38750 | 1106 | 1357 | 41213 |
| | Percent | 94.0% | 2.7% | 3.3% | 100.0% |
| **Risk level 3** | Count | 28580 | 1419 | 1490 | 31489 |
| | Percent | 90.8% | 4.5% | 4.7% | 100.0% |
| **Risk level 4** | Count | 21483 | 1663 | 1201 | 24347 |
| | Percent | 88.2% | 6.8% | 4.9% | 100.0% |
| **Risk level 5** | Count | 13584 | 1576 | 910 | 16070 |
| | Percent | 84.5% | 9.8% | 5.7% | 100.0% |
| **Total** | Count | 160456 | 6280 | 5779 | 172515 |
| | Percent | 93.0% | 3.6% | 3.3% | 100.0% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

Note: Excludes defendants who had their bail revoked for violating technical conditions of release. These defendants represent approximately 6% of the total pretrial release population during the study period.

As noted previously, for the purposes of data analysis to develop a risk classification scheme, defendants who were deemed to have failed to appear and/or to have been a danger to the community pending trial were classified "failure" and those defendants who experienced neither and remained in the community during the entire time pending trial were classified "successful". It was

further noted that defendants who had their bail revoked for violating technical conditions or other reasons were omitted from the analysis. Although the purpose of a pretrial risk assessment is to predict the risk of failure to appear and danger to the community pending trial, additional analysis was conducted to determine if the risk classification scheme also appropriately classified risk of technical violations. As can be seen in Appendix Tables A6–8, the risk classification scheme also accurately classified defendants in five levels of risk based on the likelihood of pretrial failure due to technical violations.

## Summary of Findings and Recommendations

Research was conducted which identified nine statistically significant and policy relevant predictors of pretrial risk of federal criminal defendants. The nine predictors include pending charges, prior misdemeanor arrests, prior felony arrests, prior failures to appear, employment status, residence status, substance abuse type, primary charge category, and primary charge type. The predictors of pretrial risk were utilized to develop a risk classification scheme that classifies defendants into five levels or risk of pretrial failure (failure to appear and danger to the community). Separate data analysis revealed the risk classification scheme to also be a good predictor of the risk of technical violations. The research conducted and the corresponding risk classification scheme provides the necessary information for the future development of a risk assessment instrument that could be used by federal pretrial services officers to assess the risk of individual criminal defendants.

# RESEARCH OBJECTIVE TWO – RISK LEVELS, RELEASE AND DETENTION RATES, AND PRETRIAL FAILURE RATES

*Examine persons charged with federal criminal offenses over the past seven (7) years and assess how the average pretrial risk level of federal criminal defendants has changed. Assess whether the change in the average risk level has resulted in changes in the pretrial release/detention rate and pretrial failure rate.*

## Methods and Analysis Results

### Average Pretrial Risk Levels 2001–2007

The first step in answering this research objective was to determine the average risk levels for defendants for the past seven (7) years to identify any changes in risk level over time. Figure 13 shows the average risk level for each year while figure 14 shows the percentage of defendants classified in each risk level between 2001 and 2007.

**Figure 13. Average Risk Level 2001 to 2007**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

The average risk level for persons charged with federal criminal offenses has gradually increased from 2.85 to 3.1. Figure 14 demonstrates the change in the percentage of defendants classified in each of the five risk levels. Most notably, in 2001 16.2% of the defendants were classified in the highest risk level (5) and by 2007, 23.1% of the defendants were classified in the highest risk level – an increase of 6.9%. In 2001, 43.9% of all defendants were classified in the two lowest risk levels (1 & 2) while only 37.5% of all defendants were classified in these levels in 2007. Similarly, in 2001, 35.1% of all defendants were classified in the two highest risk levels (4 & 5) while 43.8% of all defendants were classified in these levels in 2007.

**Figure 14. Risk Level Classification 2001 to 2007**

|  | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | % Change 01-07 |
|---|---|---|---|---|---|---|---|---|
| **Risk Level 1** | 22.3% | 21.6% | 19.8% | 19.6% | 18.6% | 19.5% | 19.1% | -3.2% |
| **Risk Level 2** | 21.6% | 21.0% | 20.8% | 19.7% | 20.1% | 18.6% | 18.4% | -3.2% |
| **Risk Level 3** | 21.0% | 20.5% | 20.2% | 20.5% | 20.5% | 18.7% | 18.6% | -2.4% |
| **Risk Level 4** | 18.9% | 19.4% | 20.1% | 19.8% | 20.2% | 20.9% | 20.7% | +1.8% |
| **Risk Level 5** | 16.2% | 17.5% | 19.1% | 20.4% | 20.8% | 22.4% | 23.1% | +6.9% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

## Pretrial Release/Detention Rates and Risk Levels 2001–2007

The next step in answering this research objective was to determine the pretrial release/detention rates for the past seven (7) years and examine the release/detention rates by risk level. Figure 15 demonstrates the change in release/detention rates over time. The average detention rates increased 11% between 2001 and 2007.

**Figure 15. Release and Detention Rates 2001 to 2007**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

The release rates varied substantially across risk levels as can be seen in figure 16 below. The Court released 87% of all defendants classified as risk level 1, 62% classified as risk level 2, 49% classified as risk level 3, 40% classified as risk level 4 and 28% classified as risk level 5. The higher the risk level the less likely defendants were to be released pending trial.

The average risk levels have increased gradually over the past seven years while the detention rates have also increased. An examination of risk levels and detention rates by year was completed to assist in determining whether or not the increase in average risk level may have affected the increase in detention rates. Although there have been fluctuations in detention rates by risk level across the years, on average a higher percentage of people were detained pending trial in each risk level.

**Figure 16. Detention Rates by Risk Level 2001–2007**

| Detention Rates by Risk Level 2001–2007 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | Average | % Change 01-07 |
| **Risk Level 1** | 10.0% | 11.8% | 12.1% | 14.2% | 15.3% | 13.3% | 13.4% | 12.9% | 2.9% |
| **Risk Level 2** | 33.6% | 36.2% | 37.4% | 41.1% | 42.8% | 35.1% | 37.0% | 37.7% | 4.1% |
| **Risk Level 3** | 45.7% | 47.6% | 50.7% | 53.6% | 53.4% | 50.4% | 51.8% | 50.6% | 4.9% |
| **Risk Level 4** | 55.4% | 56.6% | 58.8% | 61.2% | 62.3% | 61.4% | 62.9% | 60.0% | 4.6% |
| **Risk Level 5** | 68.6% | 68.7% | 71.5% | 73.1% | 71.9% | 73.7% | 75.3% | 72.1% | 3.5% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

There are a greater percentage of people classified in the higher risk levels in 2007 compared to 2001 yet the detention rates within risk levels have also increased. A closer examination of the data reveals that approximately 60% of the increase in the detention rate change can be attributed to a greater number of defendants classified in the higher risk levels (Category 4 and 5) while 40% of the increase is due to other reasons that were not identified.

## Pretrial Failure Rates and Risk Levels 2001–2007

The final step in answering this research objective was to determine the pretrial failure rates for the past seven (7) years and examine the failure rates by risk levels. Figure 17 demonstrates the pretrial failure rates by risk level over time.

There was little variance in the average pretrial failure rates across the 7 years. The failure rates were as follows: 7.3% in 2001; 6.9% in 2002, 2003, and 2004; 6.8% in 2005; 7% in 2006; and 7.4% in 2007. It should be noted that the data were extracted in June 2008. At that time 2.6% of all released defendants in 2006 and 8.6% released in 2007 were still pending trial and their cases had not been closed. For this reason, it can be expected that the pretrial failure rates may change for these years and will likely decrease slightly.



Figure 17. Pretrial Failure Rates by Risk Level 2001 to 2007

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

The average pretrial failure rates for risk level 1 showed little change across the seven years (2.2% in 2001 to 2.4% in 2007). The average pretrial failure rates for risk level 2 decreased by 1.7% between 2001 and 2007 (7.2% to 5.5%). The average pretrial failure rates for risk level 3 decreased by nearly 1% between 2001 and 2007 (10.2% to 9.3%). The average pretrial failure rates for risk level four remained relatively unchanged (12.6% in 2001 to 12.7% in 2007). Most notably, the average pretrial failure rates for risk level 5 increased from 14.6% to 17% between 2001 and 2007.

## Summary of Findings and Recommendations

An examination of persons charged with federal criminal offenses over the past seven (7) years revealed that the average pretrial risk level of federal criminal defendants has increased from 2.85 to 3.1 based on the 5 risk level scale. In addition, there are a greater percentage of people (8.7%) classified in the higher risk levels in 2007 compared to 2001 yet the detention rates within risk levels have also increased. A closer examination of the data reveals that approximately 60% of the increase in the detention rate change can be attributed to a greater number of defendants classified in the higher risk levels (4 and 5) while 40% of the increase is due to other reasons that were not identified.

## RESEARCH OBJECTIVE THREE – ALTERNATIVES TO DETENTION, RISK LEVELS, AND PRETRIAL FAILURE

*Examine defendants released pending trial with the condition of participation in an alternative to detention. Identify the level of pretrial risk these defendants pose and, controlling for risk level, assess whether participation in an alternative to detention mitigated the risk of pretrial failure.*

### Methods and Analysis Results

#### Defendant Participation in an Alternative to Detention

The first step in answering this research objective was to examine the defendants released pending trial with the condition of participation in an alternative to detention (ATD). There are nine alternatives to detention including the following: third-party custodian, substance abuse testing, substance abuse treatment, location monitoring, halfway house, community housing or shelter, mental health treatment, sex offender treatment, and computer monitoring. The data used for analysis did not distinguish between halfway house and community housing or shelter, therefore, the two ATD are combined into one category – housing and shelter.

Seventy-two percent of the defendants with a known risk level were released via the alternatives to detention program (released with one or more alternative to detention). The percent of defendants released via the alternatives to detention program varied by risk level as seen in figure 18.

**Figure 18. Defendants Released on the Alternatives to Detention Program**

|  | Released without ATD | Released with ATD |
|---|---|---|
| **Risk Level 1** | 56.6% | 43.4% |
| **Risk Level 2** | 30.4% | 69.6% |
| **Risk Level 3** | 16.1% | 83.9% |
| **Risk Level 4** | 8.2% | 91.8% |
| **Risk Level 5** | 4.3% | 95.7% |
| **Total** | 27.7% | 72.3% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

The defendants required to participate in each of the alternatives to detention as a condition of release include the following: third-party custodian (10.4%), substance abuse testing (60.1%), substance abuse treatment (35.1%), location monitoring (17.6%), housing and shelter (4.1%), mental health treatment (9.3%), sex offender treatment (0.4%), and computer monitoring (1.5%).

## Alternatives to Detention Participation by Risk Level

The next step in answering this research objective was to examine the defendants released pending trial with the condition of participation in an alternative to detention by type of alternative based on risk level (see figure 19).

**Figure 19. Alternatives to Detention by Risk Level**

| | | 3rd Party Custodian | Sub. Abuse Testing | Sub. Abuse Treatment | Location Monitor | Housing & Shelter | Mental Health Treatment | Sex Offender Treatment | Computer Monitor |
|---|---|---|---|---|---|---|---|---|---|
| Risk Level 1 | Count | 2079 | 12423 | 6157 | 4048 | 320 | 4604 | 359 | 1420 |
| | Percent | 4.6% | 27.2% | 13.5% | 8.9% | .7% | 10.1% | .8% | 3.1% |
| Risk Level 2 | Count | 3784 | 22780 | 12472 | 5948 | 1150 | 4213 | 227 | 865 |
| | Percent | 9.3% | 55.9% | 30.6% | 14.6% | 2.8% | 10.3% | .6% | 2.1% |
| Risk Level 3 | Count | 4372 | 25475 | 14257 | 6647 | 1601 | 3026 | 63 | 196 |
| | Percent | 12.6% | 73.5% | 41.1% | 19.2% | 4.6% | 8.7% | .2% | .6% |
| Risk Level 4 | Count | 4082 | 23775 | 14813 | 6899 | 1985 | 2471 | 28 | 87 |
| | Percent | 14.3% | 83.4% | 51.9% | 24.2% | 7.0% | 8.7% | .1% | .3% |
| Risk Level 5 | Count | 3287 | 17494 | 11742 | 6378 | 1838 | 1525 | 15 | 14 |
| | Percent | 16.5% | 88.0% | 59.1% | 32.1% | 9.2% | 7.7% | .1% | .1% |
| Total | Count | 17604 | 101947 | 59441 | 29920 | 6894 | 15839 | 692 | 2582 |
| | Percent | 10.4% | 60.1% | 35.1% | 17.6% | 4.1% | 9.3% | .4% | 1.5% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

Five alternatives to detention were required as conditions of release at increasing frequencies based on risk level including third-party custodian, substance abuse testing, substance abuse treatment, location monitoring, and housing and shelter. The ATD of mental health treatment, however, was required more consistently across risk levels and the condition was required slightly less frequently as the risk level increased. The ATD of sex offender treatment and computer monitoring were required as conditions of release very infrequently – 1.5% of the defendants were released with a condition of computer monitoring and sex offender treatment was a required condition in only 0.4% of all cases.

## Alternatives to Detention and Pretrial Failure

The final step in answering this research objective was to assess whether participation in the alternatives to detention program mitigated the risk of pretrial failure when controlling for risk. Figure 20 demonstrates the pretrial success rates for defendants who did and did not participate in the alternatives to detention program by risk level.

**Figure 20. Defendant Pretrial Success Rates With and Without Release to ATD Program**

|  | Released without ATD | Released with ATD |
|---|---|---|
| **Risk Level 1** | 97.6% | 96.4% |
| **Risk Level 2** | 94.8% | 92.8% |
| **Risk Level 3** | 90.7% | 91.3% |
| **Risk Level 4** | 87.7% | 88.1% |
| **Risk Level 5** | 83.8% | 84.3% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

On average, defendants released to the alternatives to detention program who were lower risk, risk levels 1 and 2, were less likely to be successful pending trial while defendants in the moderate to higher risk levels (risk levels 3, 4, & 5) were more likely to be successful if released to the alternatives to detention program.

More detailed analysis was conducted to determine the impact of each ATD on pretrial outcome. The analysis was conducted by completing logistic regression models for each alternative to detention while controlling for risk level (see Appendix Table A9).

THIRD-PARTY CUSTODIAN

Defendants in the highest risk level (5) who were released with a condition of third-party custodian were 20% less likely to fail pending trial when compared to defendants in the same risk level who did not have the condition. There was no statistically significant difference in pretrial failure rates for those defendants in risk levels 3 and 4 for defendants who did and did not have a third-party custodian. Defendants with a condition of third-party custodian in the lowest risk levels were more likely to fail (risk level 1 – 56% more likely and risk level 2 – 30% more likely) when compared to defendants in those risk levels who did not have the condition.

SUBSTANCE ABUSE TESTING AND TREATMENT

There was no statistically significant difference in pretrial failure rates for defendants in the higher risk levels (4 & 5) who had the condition of substance abuse testing when compared to those that did not have the condition. Defendants in risk levels 1, 2, and 3 were more likely to fail (risk level 1 – 41% , risk level 2 – 27% , and risk level 3 – 16%) if they were released with a condition of drug testing when compared to those who did not have the condition.

*Defendants in the highest risk level who were released with a condition of third-party custodian were 20% less likely to fail pending case disposition*

\*\*\*\*\*\*\*\*\*\*\*\*

*Defendants in the lower to moderate risk levels released with the condition of substance abuse testing or treatment were more likely to fail pending case disposition*

The results for the condition of substance abuse testing and substance abuse treatment were similar. There was no statistically significant difference in pretrial failure rates for defendants in the higher risk levels (4 & 5) who had the condition of substance abuse treatment when compared to those that did not have the condition. Defendants in risk levels 1, 2, and 3 were more likely to fail (risk level 1 – 33% , risk level 2 – 11% , and risk level 3 – 12%) if they were released with a condition of drug treatment when compared to those who did not have the condition.

LOCATION MONITORING
There was no statistically significant difference in pretrial failure rates for defendants in the moderate and higher risk levels (3, 4 & 5) between those that had the condition of location monitoring and those that did not have the condition. Defendants in the lower risk levels were more likely to fail (risk level 1 – 2.12 times or 112% and risk level 2 – 46%) if they were released with a condition of location monitoring when compared to those who did not have the condition.

HOUSING & SHELTER
There was no statistically significant difference in pretrial failure rates for defendants in the higher risk levels (4 & 5) who had the condition of housing & shelter when compared to those that did not have the condition. Less than 5% of defendants in each of the remaining three risk levels (1, 2, and 3) were released with this condition. The low number and percent of defendants receiving this condition prevented meaningful analysis of this condition for these risk levels.

MENTAL HEALTH TREATMENT
Defendants who received mental health treatment as a condition were on average 17% less likely to fail when compared to defendants who did not have this condition. The decrease in failure rates varied across levels and ranged from 29% less likely to no statistically significant difference. There was no risk level in which defendants were more likely to fail pending trial if they were released with a mental health treatment condition.

> *Defendants who received mental health treatment as a condition were on average 17% less likely to fail when compared to defendants who did not have this condition*

SEX OFFENDER TREATMENT AND COMPUTER MONITORING
Less than 0.5% of all defendants released pending trial had a condition of sex offender treatment while less than 1.5% of all defendants released had a condition of computer monitoring. The low number and percent of defendants receiving this condition prevented meaningful analysis of these conditions.

## Summary of Findings and Recommendations

On average, lower risk defendants released to the ATD program (risk levels 1 & 2) were more likely to experience pretrial failure when compared to defendants released without the program. Moderate and higher risk defendants released to the ATD program (risk levels 3, 4 & 5) were less likely to experience pretrial failure when compared to defendants released without the program. This finding is consistent with the Evidence-Based Principle for Effective Intervention 3(a) Target Interventions: Risk Principle – prioritizes supervision and treatment resources for higher risk

offenders.[20] When examining individual alternatives to detention, this pattern was similar for the following alternatives: third-party custodian, substance abuse testing, substance abuse treatment, location monitoring, and housing and shelter. The ATD of mental health treatment, however, either had a neutral effect or decreased failure pending trial regardless of risk level. Sex offender treatment and computer monitoring were used so infrequently that meaningful analysis of the alternatives could not be conducted.

---

[20] Implementing Evidence-Based Practice in Community Corrections: The Principles of Effective Intervention" (National Institute of Corrections and Crime and Justice Institute (2004)

# RESEARCH OBJECTIVE FOUR – EFFICACY OF THE ALTERNATIVES TO DETENTION PROGRAM

*Assess the efficacy of the alternatives to detention program at reducing federal criminal justice costs, particularly costs associated with pretrial secured detention.  Identify a population most suited – both programmatically and economically – for pretrial release with conditions of alternatives to detention.*

## Methods and Analysis Results

### Federal Criminal Justice Costs

The first step to answering this research question was to quantify the costs associated with pretrial detention and release to the ATD program by risk level.  The average cost of detention by risk level is provided in figure 21 and the average cost of release to the ATD program is provided in figure 22.

**Figure 21. Average Cost of Pretrial Detention by Risk Level**

| Risk Level | Avg. Pretrial Detention Days | Avg. Daily Detention Per Diem Rate | Avg. Cost of Pretrial Detention |
|---|---|---|---|
| **Risk Level 1** | 289 | $67.27 day | $19,441 |
| **Risk Level 2** | 279 | $67.27 day | $18,768 |
| **Risk Level 3** | 281 | $67.27 day | $18,903 |
| **Risk Level 4** | 286 | $67.27 day | $19,239 |
| **Risk Level 5** | 296 | $67.27 day | $19,912 |

Data Source for Average Pretrial Detention Days: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System).  All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Data Source for Average Cost of Detention: U.S. Marshal Service, Prisoner Tracking System, September 30, 2008

Note: The average pretrial detention days was determined by examining the average length of detention for defendants who remained detained the entire time pending trial.  The average cost of pretrial detention was calculated by multiplying the average pretrial detention days by the average daily detention per diem rate.

Source: Luminosity.  Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

**Figure 22. Average Cost of Release on Alternatives to Detention Program**

| Risk Level | Average Cost of Supervision | Avg. Cost of ATD | Avg. Cost of Fugitive Recovery | Avg. Cost of release on ATD Program |
|---|---|---|---|---|
| Risk Level 1 | $1,599 | $1,431 | $75 | $3,105 |
| Risk Level 2 | $1,667 | $1,718 | $178 | $3,563 |
| Risk Level 3 | $1,752 | $1,848 | $253 | $3,853 |
| Risk Level 4 | $1,785 | $2,145 | $264 | $4,194 |
| Risk Level 5 | $1,870 | $2,410 | $307 | $4,587 |

Data Source Average Cost of Supervision: The average length of supervision per risk level was determined by examining the average length of supervision days for all defendants released at some point pending trial. [The Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.] The Administrative Office of the U.S. Courts – OPPS reported the average daily cost of supervision in 2007 was $5.65. The average cost of supervision was calculated by multiplying the average length of supervision days per risk level by the daily cost of supervision.

Data Source Average Cost of ATD: The average cost of each alternative to detention was provided by the Administrative Office of the U.S. Courts – OPPS as follows: third-party custodian ($0), substance abuse testing ($196), substance abuse treatment ($2,060), location monitoring ($756), housing and shelter ($6,047), mental health treatment ($1,477), sex offender treatment (2,159), and computer monitoring ($503). The total cost of alternatives to detention for all defendants released with one or more ATD was calculated using the PACTS data referenced above. The Average cost of ATD per risk level was calculated by multiplying the total cost of alternatives to detention for all defendants released with one or more ATD by the percent of defendants in each risk level released to the ATD program.

Data Source Average Cost of Fugitive Recovery: The average cost of $5,382 to recover a fugitive was provided by OFDT and based on FY2008 performance measures from the U.S. Marshal Service. The average cost of fugitive recovery per risk level was calculated by multiplying the average cost to recover a fugitive by the percent of defendants who failed to appear in each risk level.

Note: The average cost of release on the ATD program was calculated for each risk level by adding the average cost of supervision, average cost of release to the ATD program, and average cost of fugitive recovery.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

It must be acknowledged that there are costs that were not included primarily because they are difficult to quantify. Examples of such costs include, but are not limited to, the costs associated with new crimes committed by defendants on release pending trial, the cost incurred by the courts and the rest of the justice system when a defendant fails to appear for a scheduled court appearance, and the cost of unnecessary detention to the defendant and his/her family.

**Efficacy of the Alternatives to Detention Program**

The average cost of detaining a defendant pending trial is $19,253 while the average cost of releasing a defendant pending trial to the alternatives to detention program (including cost of supervision, the alternatives to detention, and fugitive recovery) is $3,860. A simple comparison of the average cost of detention and the average cost of release to the alternatives to detention program reveals the alternatives to detention program is substantially less costly than detention. The average savings per defendant released pending trial to the ATD program in lieu of detention is $15,393.

There are, however, significant considerations other than simply cost. The decision to release or detain a defendant pending trial requires the consideration of pretrial justice – the honoring of the presumption of innocence, the right to bail that is not excessive, and all other legal and constitutional rights afforded to accused persons awaiting trial while balancing these individual rights with the need to protect the community, maintain the integrity of the judicial process, and assure court appearance. In addition to cost, assessing the efficacy of the alternatives to detention program must include attempting to strike the proper balance between the rights of the defendant with the need to assure court appearance and safety of the community pending trial.

Figure 23 provides the release rates and corresponding success rates by risk level.

**Figure 23. Pretrial Release and Success Rates by Risk Level**

|  | Released Pending Trial | Pretrial Outcome - Successful |
|---|---|---|
| **Risk level 1** | 87.1% | 97.7% |
| **Risk level 2** | 62.3% | 94.0% |
| **Risk level 3** | 49.4% | 90.8% |
| **Risk level 4** | 40.0% | 88.2% |
| **Risk level 5** | 27.9% | 84.5% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

As discussed in the previous section (Research Objective Three), lower risk defendants released to the ATD program (risk levels 1 & 2) were more likely to experience pretrial failure when compared to defendants released without the program. Moderate and higher risk defendants released to the ATD program (risk levels 3, 4 & 5) were less likely to experience pretrial failure when compared to defendants released without the program. This finding is consistent with the Evidence-Based Principle for Effective Intervention 3(a) Target Interventions: Risk Principle. When examining individual alternatives to detention, this pattern was similar for the following alternatives: third-party custodian, substance abuse testing, substance abuse treatment, location monitoring, and housing and shelter. The ATD of mental health treatment, however, either had a neutral effect or decreased failure pending trial regardless of risk level. Sex offender treatment and computer monitoring were used so infrequently that meaningful analysis of the alternatives could not be conducted.

**Population Most Suited For Pretrial Release with Alternative to Detention Conditions**

Most of the defendants (87%) in the lowest risk level, risk level 1, were released pending trial. Of those released, less than half (43%) were released with an alternative to detention condition. Defendants in risk level one had a 97.7% success rate and release with an ATD did not increase success. Defendants classified as risk level 1 are the best candidates for release yet the use of the ATD program for these defendants generally does not increase success and in some cases increases the risk of pretrial failure.

Sixty-two percent of all defendants classified in level 2 were released pending trial and of those released, the average success rate was 94%. Over two-thirds of risk level 2 defendants were released with one or more ATD conditions. Defendants classified as level 2 are good candidates for release yet similar to risk level 1, the use of the ATD program for these defendants generally does not increase success and in some cases increases the risk of pretrial failure.

Defendants classified in risk level 3 had an average success rate of 90.8% yet just less than half of the defendants were released pending trial. Eighty-four percent of all the risk level 3 defendants released pending trial were released with one or more alternative to detention. Defendants who participated in the alternatives to detention program were slightly more likely to be successful pending trial. In addition, it is plausible that many of these defendants may have been detained if not for the ATD program.

Defendants classified as risk level 4 had a 2.6% lower success rate when compared to risk level 3 defendants, 88.2% vs. 90.8% respectively. Forty percent of the risk level 4 defendants were released pending trial and nearly 92% of those were released to the ATD program. In these cases it is likely that many of these defendants may have been detained if not for the ATD program.

Approximately 30% of the highest risk defendants, risk level 5, were released pending trial and nearly all (95.7%) were released to the ATD program. The highest risk defendants had an average success rate of 84.5%.

> *Defendants in risk levels 1 and 2 have the lowest risk of pretrial failure and, consistent with the EBP risk principle, on average these defendants are more successful if released without ATD conditions*
>
> *\*\*\*\*\*\*\*\*\*\**
>
> *The populations most suited for pretrial release — both programmatically and economically — with conditions of alternatives to detention are defendants in risk levels 3 and 4*
>
> *\*\*\*\*\*\*\*\*\*\**
>
> *Defendants determined by the Court to be appropriate for release in risk level 5 should be provided ATD conditions as deemed necessary*

## Summary of Findings and Recommendations

Assessing the efficacy of the alternatives to detention program included considerations of cost while attempting to strike the proper balance between the rights of the defendant with the need to assure court appearance and safety of the community pending trial. When considering cost alone, the average savings per defendant released pending trial to the ATD program in lieu of detention is $15,393.

Accordingly, throughout the duration of the Department of Justice-Administrative Office of the U.S. Courts alternative to detention reimbursement program, the program has resulted in financial efficiencies for the secured detention program. For example, during 2007, the Federal Judiciary utilized approximately $2.4 million of funding provided by the Department of Justice (acting through the Office of the Federal Detention Trustee) to supplement their funding for alternatives to detention. This funding was used to fund alternatives to detention for 3,226 defendants released pending trial. Had these defendants been ordered detained, the Department of Justice would have incurred additional costs for detention housing of approximately $38 million. Additionally, considering the scarcity of secured detention resources, an additional 1,500 additional detention beds would have been occupied throughout the year.

When considering the percent of defendants released pending trial, success rates, ATD participation rates and the impact of participation in the ATD program by risk level, the populations most suited for pretrial release – both programmatically and economically – with conditions of alternatives to detention are defendants in risk levels 3 and 4. Defendants in risk levels 1 and 2 have the lowest risk with the highest success rates and, consistent with the EBP risk principle, these defendants generally do better if released without ATD conditions. Defendants determined by the Court to be appropriate for release in risk level 5 should be provided ATD conditions as deemed necessary.

# RESEARCH OBJECTIVE FIVE – CURRENT RISK ASSESSMENT PRACTICES

*Examine how federal pretrial services currently assesses pretrial risk federal criminal defendants pose and the effectiveness of those practices in reducing unwarranted detention and preventing failures to appear and danger to the community while pending trial.*

## Methods and Analysis Results

### Statistically Significant and Policy Relevant Predictors of Pretrial Recommendations

Pretrial services officers make recommendations to the Court regarding whether defendants should be released or detained pending trial. The first step to answering this research objective was to identify the statistically significant and policy relevant predictors of pretrial recommendations for release or detention. See Appendix Table A10 for the logistic regression model predicting pretrial recommendation.

The analysis identified eight (8) statistically significant and policy relevant predictors of pretrial recommendation – release or detention pending trial.

1. ***Pending Felony Charges*** – Pretrial officers were 63% more likely to recommend detention for defendants with one pending felony and nearly 2 ½ times more likely (150%) for defendants with two or more pending felonies when compared to defendants who did not have a pending felony charge at the time of the arrest for the current charge.

2. ***Prior Felony Convictions*** – Pretrial officers were 81% more likely to recommend detention for defendants with one prior felony conviction and nearly 3½ times more likely for defendants with two or more prior felony convictions when compared to defendants who did not have a prior felony conviction.

3. ***Prior Felony Violent Convictions*** – Pretrial officers were 20% more likely to recommend detention for defendants with one prior violent felony conviction and 86% more likely for defendants with two or more prior violent felony convictions when compared to defendants who did not have a prior violent felony conviction.

> *The statistically significant and policy relevant predictors of pretrial recommendation include –*
>
> ✓ *Pending Felony Charges*
> ✓ *Prior Felony Convictions*
> ✓ *Prior Violent Felony Convictions*
> ✓ *Prior Failures to Appear*
> ✓ *Employment Status*
> ✓ *Residence Status*
> ✓ *Primary Charge Category*
> ✓ *Primary Charge Type*

4. ***Prior Failures to Appear*** – Defendants with prior failures to appear in court were more likely to be recommended for detention pending trial when compared to defendants who did not have a prior failure to appear in court: one prior failure to appear (21% more likely) and two or more prior failures to appear (67% more likely).

5. ***Employment Status*** – Defendants who were unemployed at the time of their arrest were 47% more likely to be recommended for detention when compared to defendants who were employed.

6. *Residence Status* – Defendants who did not own or were not buying their residence were more likely to be recommended for detention pending trial when compared to defendants who did own or were buying their residence: renting (68% more likely); making no financial contribution to residence (90% more likely); no residence/place to live (7.8 times more likely); and another type of residence (2.6 times more likely).

7. *Primary Charge Category* – Defendants charged with a felony were 3.8 times more likely to be recommended for detention pending trial when compared to defendants who were charged with a misdemeanor or infraction.

8. *Primary Charge Type* – When compared to defendants charged with a theft or fraud related offense, defendants charged with an immigration law violation (14.4 times), a violent offense (4.6 times), a drug offense (4.6 times), a firearm offense (2.6 times), or another offense (1.6 times) were more likely to be recommended for detention pending trial when compared to defendants charged with a theft or fraud offense.

## Effectiveness of Current Risk Assessment Practices

The final step in answering this research question was to assess the current risk assessment practices in reducing unwarranted detention and preventing failures to appear and danger to the community while awaiting trial. Pretrial services considered many of the same factors that were identified to be the best predictors of pretrial outcome including prior failures to appear, employment status, residence status, primary charge category and primary charge type. In addition, pretrial services considered measures of pending charges and prior criminal history that were similar to the risk factors identified as predictors of pretrial outcome. Figure 24 shows the recommendations made by pretrial services for release and detention pending trial by risk level for defendants with a known risk level.

**Figure 24. Pretrial Services Recommendation Based on Risk Level**

|  |  | Pretrial Services Recommendation | | |
|---|---|---|---|---|
|  |  | Detention | Release | Total |
| Risk level 1 | Count | 10171 | 56578 | 66749 |
|  | Percent | 15.2% | 84.8% | 100.0% |
| Risk level 2 | Count | 28169 | 40826 | 68995 |
|  | Percent | 40.8% | 59.2% | 100.0% |
| Risk level 3 | Count | 37674 | 32103 | 69777 |
|  | Percent | 54.0% | 46.0% | 100.0% |
| Risk level 4 | Count | 44824 | 24947 | 69771 |
|  | Percent | 64.2% | 35.8% | 100.0% |
| Risk level 5 | Count | 54517 | 15438 | 69955 |
|  | Percent | 77.9% | 22.1% | 100.0% |
| Total | Count | 175355 | 169892 | 345247 |
|  | Percent | 50.8% | 49.2% | 100.0% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

On average, pretrial services recommended release 85% of the time for the lowest risk defendant – risk level 1. The recommendations for release continuously decreased as the risk level increased.

Figure 25 compares the recommendations for release made by pretrial services with the court's decisions regarding release and the pretrial success rates for those released pending trial. Pretrial services officers make recommendations for release less frequently in all risk levels when compared with the Courts decision to release defendants pending trial.

**Figure 25. Pretrial Recommendations/Court Decisions for Release & Success Rates by Risk Level**

|  | Pretrial Services Recommendations for Release | Court Decisions for Release | Pretrial Outcome - Successful |
|---|---|---|---|
| **Risk level 1** | 84.8% | 87.1% | 97.7% |
| **Risk level 2** | 59.2% | 62.3% | 94.0% |
| **Risk level 3** | 46.0% | 49.4% | 90.8% |
| **Risk level 4** | 35.8% | 40.0% | 88.2% |
| **Risk level 5** | 22.1% | 27.9% | 84.5% |

Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

An examination of recommendations for release rates by District was completed. In nearly all Districts the recommendation for release decreased as the risk level increased. In addition, the rates for recommendation release rates within risk levels varied greatly across the 93 Districts.

Figure 26 represents a box and whiskers plot of the recommendation for release rates for the 93 Districts by risk level. The upper and lower bounds of the larger box represents the 75th and 25th percentile, respectively while the center horizontal line represents the 50th (median). The inner box represents the mean and the vertical lines extend to the 10th and 90th percentile. Using risk level 3 as an example, the rate of recommending release averaged 46% while the median was 51%. A closer examination reveals release recommendation rates for Districts ranged from 43% at the 25th percentile to 63% at the 75th percentile. This represents a 20% variation in release recommendation rates when considering the 25th and 75th percentiles and at the extremes, the rates for recommending release for risk level 3 defendants ranged from 21% to 82%

**Figure 26. Variations in Pretrial Services Recommendations for Release Rates for 93 Districts**



Data Source: Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System). All criminal defendants processed by Pretrial Services October 1, 2001 – September 30, 2007.

Source: Luminosity. Pretrial Risk Assessment for the Federal Court – A Report Prepared for the Office of The Federal Detention Trustee, March 2009.

## Summary of Findings and Recommendations

Pretrial services considered many of the same factors that were identified to be the best predictors of pretrial outcome including prior failures to appear, employment status, residence status, primary charge category and primary charge type. In addition, pretrial services considered measures of pending charges and prior criminal history that were similar to the risk factors identified as predictors of pretrial outcome.

The examination of current pretrial risk assessment and release/detention recommendations made by pretrial services revealed that generally pretrial services agencies consider many of the best predictors of pretrial outcome when making release/detention recommendations to the court. In nearly all Districts the recommendations for release decreased as the risk level increased. There were three other significant findings detailed below.

1. The Court released a higher percentage of defendants in each risk level than was recommended by pretrial services.

2. Release and detention recommendations varied greatly across Districts within risk levels. This variation represents disparity in recommendation practices across Districts. Release

recommendations varied as much as 20% within the same risk level (when considering the 25th and 75th percentiles).

3.  Pretrial services recommended detention for 15% of the lowest risk defendants – risk level 1 (97.7% success rate), 40% of the lower risk defendants – risk level 2 (94% success rate), and more than half of the more moderate risk defendants – risk level 3 (90.8% success rate).

## RESEARCH OBJECTIVE SIX – BEST PRACTICES FOR PRETRIAL RISK ASSESSMENT AND RECOMMENDATIONS

*Identify "best practices" relating to the determination of pretrial risk and recommendations to release or detain a defendant pending trial, particularly as they relate to the assessment of pretrial risk and the administration of the alternatives to detention program.*

The research identified nine (9) statistically significant and policy relevant predictors of pretrial outcome – success or failure pending trial. The predictors were used to develop a classification scheme to scale the risk persons arrested for federal criminal offenses posed if released pending trial. The risk classification scheme identifies defendants risk levels from 1 to 5 with pretrial success rates ranging from 97.7% to 84.5%. The classification scheme correctly classifies defendants by their risk of failure to appear and danger to the community, and although not the intent of a pretrial risk assessment, it also correctly classifies defendants based on their risk of technical violations.

The results of this study should be utilized to develop a standardized empirically-based risk assessment to be used by all federal pretrial services agencies. The use of a standardized empirically-based assessment will assist in reducing the disparity in risk assessment practices and provide a foundation for evidence-based practices relating to release and detention recommendations and the administration of the alternatives to detention program.

The implementation of a standardized risk assessment will allow for the development of a policy that provides guidance to pretrial services agencies regarding release and detention recommendations including the use of the alternatives to detention program. Such a policy should represent several of the research findings presented here.

First, the lower risk defendants, risk levels 1 and 2, are the most likely to succeed if released pending trial and in most cases release should be recommended. An alternative to detention, with the exception of mental health treatment when appropriate, generally decreases the likelihood of success for this population and should be recommended sparingly.

Second, the alternatives to detention program is most appropriate for the more moderate and higher risk defendants as it allows for pretrial release while generally increasing pretrial success. Alternatives to detention should be recommended for this population when a defendant presents a specific risk of pretrial failure that can be addressed by an ATD. For example, a person with a substance abuse problem may be appropriate for drug testing, assessment, or treatment based on their specific situation. Defendants who do not present with a substance abuse problem should not be recommended for a substance abuse related ATD.

Finally, the populations most suited for pretrial release – both programmatically and economically - with conditions of alternatives to detention are defendants in risk levels 3 and 4. Attempts should be made to maximize the release of the defendants in these risk categories while minimizing the risk of pretrial failure through the ATD program. This practice is consistent with the purpose and intent of bail and striking the balance between the legal and constitutional rights of defendants with the need to protect the community and assure court appearance pending trial.

APPENDIX

## Table A1.  Prior Misdemeanor and Felony Drug Convictions

|  | Misdemeanor Drug Convictions | Felony Drug Convictions |
|---|---|---|
| None | 79.5% | 68.9% |
| One | 11.0% | 15.0% |
| Two or more | 9.5% | 16.1% |
| Total | 100% | 100% |

## Table A2.  Prior Misdemeanor and Felony Violent Convictions

|  | Misdemeanor Violent Convictions | Felony Violent Convictions |
|---|---|---|
| None | 80.3% | 78.3% |
| One | 10.8% | 11.9% |
| Two or more | 8.9% | 9.8% |
| Total | 100% | 100% |

## Table A3. Logistic Regression Model: Pretrial Risk Factors to Predict Pretrial Outcome

| | B | S.E. | Wald | Sig. | Exp(B) Odds ratio | 95.0% C.I.for EXP(B) | |
|---|---|---|---|---|---|---|---|
| | | | | | | Lower | Upper |
| Pending charge | .182 | .035 | 26.684 | .000 | 1.200 | 1.120 | 1.285 |
| No prior misdemeanor arrest (reference) | | | 168.018 | .000 | | | |
| One prior misdemeanor arrest | .124 | .042 | 8.600 | .003 | 1.132 | 1.042 | 1.230 |
| Two prior misdemeanor arrests | .276 | .049 | 32.053 | .000 | 1.318 | 1.198 | 1.451 |
| Three prior misdemeanor arrests | .370 | .055 | 44.664 | .000 | 1.447 | 1.299 | 1.613 |
| Four prior misdemeanor arrests | .462 | .062 | 55.129 | .000 | 1.588 | 1.405 | 1.794 |
| Five or more prior misdemeanor arrests | .527 | .044 | 145.150 | .000 | 1.694 | 1.555 | 1.846 |
| No prior felony arrest (reference) | | | 79.687 | .000 | | | |
| One prior felony arrest | .198 | .039 | 25.994 | .000 | 1.219 | 1.130 | 1.315 |
| Two or more prior felony arrest | .322 | .036 | 77.866 | .000 | 1.380 | 1.284 | 1.482 |
| No failure to appear (reference) | | | 45.686 | .000 | | | |
| One failure to appear | .200 | .050 | 15.725 | .000 | 1.221 | 1.106 | 1.348 |
| Two or more failures to appear | .299 | .048 | 38.143 | .000 | 1.349 | 1.227 | 1.483 |
| Unemployed | .192 | .028 | 45.953 | .000 | 1.212 | 1.146 | 1.281 |
| Own or buying residence (reference) | | | 202.268 | .000 | | | |
| Renting residence | .499 | .039 | 165.776 | .000 | 1.648 | 1.527 | 1.778 |
| Making no contribution to residence | .552 | .044 | 160.525 | .000 | 1.737 | 1.595 | 1.892 |
| Other residence | .391 | .052 | 57.635 | .000 | 1.479 | 1.337 | 1.636 |
| No residence/place to live | .759 | .160 | 22.401 | .000 | 2.135 | 1.560 | 2.923 |
| No substance abuse problem (reference) | | | 64.963 | .000 | | | |
| Abuses alcohol | .187 | .045 | 17.576 | .000 | 1.206 | 1.105 | 1.316 |
| Abuses stimulants | .117 | .062 | 3.519 | .061 | 1.124 | .995 | 1.271 |
| Abuses narcotics | .335 | .047 | 51.584 | .000 | 1.398 | 1.276 | 1.532 |
| Abuses cannabis | .209 | .037 | 32.193 | .000 | 1.232 | 1.146 | 1.324 |
| Abuses another drug | .050 | .099 | .251 | .616 | 1.051 | .865 | 1.277 |
| Current charge a felony | .479 | .058 | 67.766 | .000 | 1.615 | 1.441 | 1.810 |
| Current charge theft or fraud (reference) | | | 374.545 | .000 | | | |
| Current charge drug offense | .576 | .036 | 255.272 | .000 | 1.779 | 1.658 | 1.909 |
| Current charge firearm offense | .413 | .050 | 67.958 | .000 | 1.512 | 1.370 | 1.668 |
| Current charge violent offense | .073 | .072 | 1.023 | .312 | 1.076 | .934 | 1.240 |
| Current charge immigration law viol. | .575 | .066 | 74.746 | .000 | 1.777 | 1.560 | 2.024 |
| Current charge other offense | -.193 | .062 | 9.669 | .002 | .825 | .730 | .931 |
| Constant | -4.29 | .071 | 3687.340 | .000 | .014 | | |

The set of independent variables significantly predict the outcome, $\chi^2$ (26) =2705.8 , p<.001; Nagelkerke $R^2$=.078
Classification Table: cutpoint=.073; predicted successful = 64.2%; predicted failure = 64.3%; Overall predicted correctly training sample = 64.2% and holdback sample = 64.3%
Area Under Receiver Operating Characteristics (ROC) Curve = .694

## Table A4. Logistic Regression Model: Predicted Probability Formula

*Predicted Probability*
$$= 1/(1 + e(-1 * (-4.295927 - 0.192627 * X1 + 0.574686 * X2 + 0.073198 * X3 + 0.413158 * X4 + 0.576092 * X5 + 0.479341 * X6 + 0.049754 * X7 + 0.208549 * X8 + 0.334963 * X9 + 0.117116 * X10 + 0.187130 * X11 + 0.758612 * X12 + 0.391476 * X13 + 0.552084 * X14 + 0.499456 * X15 + 0.192049 * X16 + 0.199966 * X17 + 0.299147 * X18 + 0.321848 * X19 + 0.197955 * X20 + 0.527241 * X21 + 0.462293 * X22 + 0.369623 * X23 + 0.276433 * X24 + 0.123880 * X25 + 0.182050 * X26) ) )$$

Where,

X1 = current charge other offense
X2 = current charge immigration law violation
X3 = current charge violent offense
X4 = current charge firearm offense
X5 = current charge drug offense
X6 = current charge a felony
X7 = abuses another drug
X8 = abuses cannabis
X9 = abuses narcotics
X10 = abuses stimulants
X11 = abuses alcohol
X12 = no residence/place to live
X13 = other residence
X14 = making no contribution to residence
X15 = renting residence
X16 = unemployed
X17 = one failure to appear
X18 = two or more failures to appear
X19 = two or more prior felony arrests
X20 = one prior felony arrest
X21 = five or more prior misdemeanor arrests
X22 = four prior misdemeanor arrests
X23 = three prior misdemeanor arrests
X24 = two prior misdemeanor arrests
X25 = one prior misdemeanor arrests
X26 = pending charge

# Table A5.  Five Risk Levels Using Predicted Probabilities

Step 1 - Identified the 20th percentiles.

| Predicted Probability | | |
|---|---|---|
| **N** | Valid | 364992 |
| | Missing | 200186 |
| **Minimum** | | .01111 |
| **Maximum** | | .34874 |
| **Percentiles** | 20 | .0418634 |
| | 40 | .0672659 |
| | 60 | .0964634 |
| | 80 | .1409890 |

Step 2 - Created a variable "five risk levels" using the 20th percentiles as follows: RECODE PPmodel1 (0 thru .0418633=1) (.0418634 thru .0672658=2) (.0672659 thru .0964633=3) (.0964634 thru .1409889=4) (.1409890 thru 1=5) INTO model1_5risklevels.  VARIABLE LABELS  model1_5risklevels 'five risk levels'.

| Five Risk Levels | | Frequency | Percent | Valid Percent | Cumulative Percent |
|---|---|---|---|---|---|
| Valid | Risk Level 1 | 72972 | 12.9 | 20.0 | 20.0 |
| | Risk Level 2 | 73020 | 12.9 | 20.0 | 40.0 |
| | Risk Level 3 | 72944 | 12.9 | 20.0 | 60.0 |
| | Risk Level 4 | 73037 | 12.9 | 20.0 | 80.0 |
| | Risk Level 5 | 72997 | 12.9 | 20.0 | 100.0 |
| | Total | 364970 | 64.6 | 100.0 | |
| Missing | System | 200208 | 35.4 | | |
| Total | | 565178 | 100.0 | | |

## Table A6. Logistic Regression Model: Pretrial Risk Factors to Predict Pretrial Outcome Including Technical Violations

| | B | S.E. | Wald | Sig. | Exp(B) | 95% C.I. for EXP(B) | |
|---|---|---|---|---|---|---|---|
| | | | | | | Lower | Upper |
| Pending charge | .157 | .026 | 35.299 | .000 | 1.170 | 1.111 | 1.232 |
| No prior misdemeanor arrest (reference) | | | 415.615 | .000 | | | |
| One prior misdemeanor arrest | .202 | .032 | 39.980 | .000 | 1.224 | 1.150 | 1.304 |
| Two prior misdemeanor arrests | .374 | .037 | 104.600 | .000 | 1.454 | 1.353 | 1.562 |
| Three prior misdemeanor arrests | .468 | .041 | 128.573 | .000 | 1.597 | 1.473 | 1.732 |
| Four prior misdemeanor arrests | .563 | .047 | 145.661 | .000 | 1.756 | 1.603 | 1.924 |
| Five or more prior misdemeanor arrests | .623 | .033 | 359.012 | .000 | 1.865 | 1.748 | 1.989 |
| No prior felony arrest (reference) | | | 95.144 | .000 | | | |
| One prior felony arrest | .144 | .029 | 24.179 | .000 | 1.155 | 1.091 | 1.224 |
| Two or more prior felony arrest | .265 | .027 | 94.583 | .000 | 1.304 | 1.236 | 1.375 |
| No failure to appear (reference) | | | 81.479 | .000 | | | |
| One failure to appear | .222 | .037 | 35.184 | .000 | 1.249 | 1.161 | 1.344 |
| Two or more failures to appear | .287 | .037 | 61.821 | .000 | 1.332 | 1.240 | 1.431 |
| Unemployed | .283 | .021 | 175.460 | .000 | 1.327 | 1.273 | 1.384 |
| Own or buying residence (reference) | | | 384.281 | .000 | | | |
| Renting residence | .443 | .030 | 220.052 | .000 | 1.557 | 1.468 | 1.650 |
| Making no contribution to residence | .605 | .033 | 343.768 | .000 | 1.832 | 1.718 | 1.953 |
| Other residence | .460 | .038 | 143.783 | .000 | 1.583 | 1.469 | 1.707 |
| No residence/place to live | .986 | .109 | 82.067 | .000 | 2.681 | 2.166 | 3.318 |
| No substance abuse problem (reference) | | | 889.040 | .000 | | | |
| Abuses alcohol | .464 | .034 | 182.860 | .000 | 1.590 | 1.487 | 1.701 |
| Abuses stimulants | .907 | .042 | 476.326 | .000 | 2.477 | 2.283 | 2.687 |
| Abuses narcotics | .876 | .034 | 658.986 | .000 | 2.402 | 2.247 | 2.568 |
| Abuses cannabis | .548 | .029 | 368.488 | .000 | 1.730 | 1.636 | 1.829 |
| Abuses another drug | .628 | .068 | 86.087 | .000 | 1.873 | 1.641 | 2.139 |
| Current charge a felony | .739 | .048 | 237.069 | .000 | 2.094 | 1.906 | 2.300 |
| Current charge theft or fraud (reference) | | | 555.499 | .000 | | | |
| Current charge drug offense | .527 | .028 | 363.841 | .000 | 1.693 | 1.604 | 1.788 |
| Current charge firearm offense | .501 | .037 | 181.804 | .000 | 1.651 | 1.535 | 1.775 |
| Current charge violent offense | .434 | .049 | 78.243 | .000 | 1.543 | 1.401 | 1.698 |
| Current charge immigration law viol. | .570 | .052 | 118.715 | .000 | 1.768 | 1.596 | 1.959 |
| Current charge other offense | -.202 | .049 | 16.870 | .000 | .817 | .742 | .900 |
| Constant | -4.230 | .058 | 5340.321 | .000 | .015 | | |

The set of independent variables significantly predict the outcome, $\chi^2$ (26) = 7542.8 , p<.001; Nagelkerke $R^2$=.147
Classification Table: cutpoint=.135; predicted successful = 67.5%; predicted failure = 67.6%; Overall predicted correctly training sample = 67.5% and holdback sample = 67.8%
Area Under Receiver Operating Characteristics (ROC) Curve = .737

## Table A7.  Pretrial Outcome Including Technical Violations in Failure Based on Risk Level

| | | Pretrial Outcome | | |
|---|---|---|---|---|
| | | Successful | Failure | Total |
| **Risk level 1** | Count | 58059 | 1904 | 59963 |
| | Percent | 96.8% | 3.2% | 100.0% |
| **Risk level 2** | Count | 38750 | 4168 | 42918 |
| | Percent | 90.3% | 9.7% | 100.0% |
| **Risk level 3** | Count | 28580 | 5539 | 34119 |
| | Percent | 83.8% | 16.2% | 100.0% |
| **Risk level 4** | Count | 21483 | 6231 | 27714 |
| | Percent | 77.5% | 22.5% | 100.0% |
| **Risk level 5** | Count | 13584 | 5673 | 19257 |
| | Percent | 70.5% | 29.5% | 100.0% |
| **Total** | Count | 160456 | 23515 | 183971 |
| | Percent | 87.2% | 12.8% | 100.0% |

## Table A8.  Pretrial Outcome by Type Including Technical Violations Based on Risk Level

| | | Pretrial Outcome | | | | |
|---|---|---|---|---|---|---|
| | | Successful | Technical Violation | Danger to Community | Failure to Appear | Total |
| **Risk level 1** | Count | 58059 | 567 | 516 | 821 | 59963 |
| | Percent | 96.8% | .9% | .9% | 1.4% | 100.0% |
| **Risk level 2** | Count | 38750 | 1705 | 1106 | 1357 | 42918 |
| | Percent | 90.3% | 4.0% | 2.6% | 3.2% | 100.0% |
| **Risk level 3** | Count | 28580 | 2630 | 1419 | 1490 | 34119 |
| | Percent | 83.8% | 7.7% | 4.2% | 4.4% | 100.0% |
| **Risk level 4** | Count | 21483 | 3367 | 1663 | 1201 | 27714 |
| | Percent | 77.5% | 12.1% | 6.0% | 4.3% | 100.0% |
| **Risk level 5** | Count | 13584 | 3187 | 1576 | 910 | 19257 |
| | Percent | 70.5% | 16.5% | 8.2% | 4.7% | 100.0% |
| **Total** | Count | 160456 | 11456 | 6280 | 5779 | 183971 |
| | Percent | 87.2% | 6.2% | 3.4% | 3.1% | 100.0% |

## Table A9. Pretrial Failure Rates for Alternatives to Detention by Risk Level

| | 3rd Party Custodian | | | Sub. Abuse Testing | | | Sub. Abuse Treatment | | | Location Monitoring | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Odds Ratio | Sign. | Count | Odds Ratio | Sign. | Count | Odds Ratio | Sign. | Count | Odds Ratio | Sign. | Count |
| Risk Level 1 | 1.556 | 0.000 | 2079 | 1.411 | 0.000 | 12423 | 1.33 | 0.000 | 6157 | 2.118 | 0.000 | 4048 |
| Risk Level 2 | 1.298 | 0.000 | 3784 | 1.274 | 0.000 | 22780 | 1.108 | 0.025 | 12472 | 1.465 | 0.000 | 5948 |
| Risk Level 3 | 1.081 | 0.184 | 4372 | 1.159 | 0.001 | 25475 | 1.125 | 0.003 | 14257 | 1.088 | 0.090 | 6647 |
| Risk Level 4 | 0.939 | 0.285 | 4082 | 1.039 | 0.478 | 23775 | 1.048 | 0.241 | 14813 | 1.064 | 0.182 | 6899 |
| Risk Level 5 | 0.831 | 0.003 | 3287 | 1.014 | 0.830 | 17494 | 1.054 | 0.239 | 11742 | 0.975 | 0.590 | 6378 |
| Total | 1.306 | 0.000 | 17604 | 1.949 | 0.000 | 101947 | 1.569 | 0.000 | 59441 | 1.52 | 0.000 | 29920 |

| | Housing & Shelter | | | Mental Health Treatment | | | Sex Offender Treatment* | | | Computer Monitor* | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Odds Ratio | Sign. | Count | Odds Ratio | Sign. | Count | Odds Ratio | Sign. | Count | Odds Ratio | Sign. | Count |
| Risk Level 1 | 2.977 | 0.000 | 320 | 0.928 | 0.454 | 4604 | 0.765 | 0.486 | 359 | 0.778 | 0.202 | 1420 |
| Risk Level 2 | 1.42 | 0.004 | 1150 | 0.773 | 0.001 | 4213 | 0.455 | 0.058 | 227 | 0.863 | 0.376 | 865 |
| Risk Level 3 | 1.268 | 0.011 | 1601 | 0.84 | 0.021 | 3026 | 0.454 | 0.276 | 63 | 0.543 | 0.099 | 196 |
| Risk Level 4 | 1.193 | 0.025 | 1985 | 0.922 | 0.277 | 2471 | 0.775 | 0.732 | 28 | 1.052 | 0.893 | 87 |
| Risk Level 5 | 1.094 | 0.252 | 1838 | 1.187 | 0.034 | 1525 | 0.669 | 0.705 | 15 | 2.008 | 0.303 | 14 |
| Total | 1.762 | 0.000 | 6894 | 0.854 | 0.000 | 15839 | 0.371 | 0.000 | 692 | 0.491 | 0.000 | 2582 |

**\* Less than 5% participated in this alternative to detention**

# Table A10. Logistic Regression Model: Pretrial Risk Factors to Predict Pretrial Recommendation

| | B | S.E. | Wald | Sig. | Exp(B) | 95% C.I. for EXP(B) | |
|---|---|---|---|---|---|---|---|
| | | | | | | Lower | Upper |
| No prior felony conviction (reference) | | | 5609.551 | .000 | | | |
| One prior felony conviction | .596 | .016 | 1469.397 | .000 | 1.815 | 1.761 | 1.871 |
| Two or more prior felony convictions | 1.227 | .017 | 5356.999 | .000 | 3.411 | 3.301 | 3.525 |
| No pending felonies (reference) | | | 1364.104 | .000 | | | |
| One pending felony | .491 | .019 | 665.424 | .000 | 1.633 | 1.574 | 1.695 |
| Two or more pending felony | .902 | .031 | 826.282 | .000 | 2.465 | 2.318 | 2.622 |
| No prior violent felony conviction (reference) | | | 691.492 | .000 | | | |
| One prior violent felony conviction | .187 | .019 | 100.538 | .000 | 1.205 | 1.162 | 1.250 |
| Two or more prior violent felony convictions | .618 | .024 | 671.730 | .000 | 1.856 | 1.771 | 1.945 |
| Unemployed | .388 | .011 | 1139.647 | .000 | 1.474 | 1.441 | 1.508 |
| Own or buying residence (reference) | | | 3202.577 | .000 | | | |
| Renting residence | .522 | .015 | 1136.842 | .000 | 1.685 | 1.635 | 1.737 |
| Making no contribution to residence | .641 | .017 | 1397.180 | .000 | 1.899 | 1.836 | 1.964 |
| Other residence | .957 | .019 | 2477.869 | .000 | 2.604 | 2.508 | 2.704 |
| No residence/place to live | 1.912 | .060 | 1028.250 | .000 | 6.770 | 6.023 | 7.609 |
| Current charge a felony | 1.332 | .029 | 2048.138 | .000 | 3.789 | 3.577 | 4.014 |
| Current charge theft or fraud (reference) | | | 18447.688 | .000 | | | |
| Current charge drug offense | 1.535 | .016 | 9267.792 | .000 | 4.640 | 4.497 | 4.787 |
| Current charge firearm offense | .948 | .022 | 1833.525 | .000 | 2.581 | 2.472 | 2.696 |
| Current charge violent offense | 1.528 | .025 | 3750.917 | .000 | 4.610 | 4.390 | 4.841 |
| Current charge immigration law viol. | 2.672 | .022 | 15296.871 | .000 | 14.463 | 13.863 | 15.088 |
| Current charge other offense | .455 | .026 | 301.151 | .000 | 1.577 | 1.498 | 1.660 |
| No failure to appear (reference) | | | 629.615 | .000 | | | |
| One failure to appear | .190 | .022 | 76.813 | .000 | 1.210 | 1.159 | 1.262 |
| Two or more failures to appear | .516 | .021 | 597.762 | .000 | 1.675 | 1.607 | 1.745 |
| Constant | -3.731 | .034 | 11807.654 | .000 | .024 | | |

The set of independent variables significantly predict the outcome, $\chi^2$ (19) = 61535.5 , p<.001; Nagelkerke $R^2$=.375
Classification Table: cutpoint=.523; predicted release =70.9 %; predicted detention =73.2%; Overall predicted correctly training sample = 72.2% and holdback sample = 72.3%
Area Under Receiver Operating Characteristics (ROC) Curve = .812