# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 2:18CR00060- 001 |
| GERALD LAWSON, | : | JUDGE SARGUS |
| Defendant. | : | |

**SENTENCING MEMORANDUM OF DEFENDANT GERALD LAWSON**

Now comes the Defendant, Gerald Lawson, by and through counsel, and hereby submits this sentencing memorandum for the Court's consideration in sentencing.

Mr. Lawson submits that an appropriate sentence in this case would be credit for time served and a three year term of probation. This sentence would take into account Mr. Lawson's good character, his lack of criminal record, his pleading guilty and taking responsibility for his actions, his work and family history, the seriousness of the offense, and the sentences of similar defendants.

Mr. Lawson took responsibility for his actions and pled guilty to Count Two of the Indictment, Aiding and Abetting a Prohibited Person in Possession of a Firearm, a violation of 18 U. S. C. § 922(g)(1), (g) (9) and 924 (a)(2) and 2(a) before this Court on May 31, 2018, pursuant to an 11 (c)(1)(B) plea agreement. The parties agreed to advisory sentencing guidelines factors, including that pursuant to U.S.S.G § 2K2.1(a)(7), the base offense level is 12. PSR at ¶ 4. The parties also agreed to reserve the right to argue at sentencing the application of any other upward or downward adjustments or departures. *Id.* There is no mandatory minimum in the case and the statutory maximum sentence is 10 years, and the parties agreed to a Statement of Facts. The

guideline stipulations are not binding on the court. However, there are strong reasons within the sentencing guidelines, and the statutory purposes of sentencing, for the court to impose a sentence within the applicable guidelines range in this case. There are several defendant specific factors that the court must consider pursuant to 18 U.S.C. § 3553(a) that mitigate in favor of a sentence of time served. Counsel requests the Court to use its broad discretion in fashioning a just sentence in this case.

> I. **18 U.S.C. § 3553(a)(1); the History and Characteristics of Mr. Lawson and the Nature and Circumstances of the Offense Warrant a Credit for Time Served Sentence Followed by 3 Years of Probation.**

The 3553 (a) factors include the (1) nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, (D) to provide the defendant with needed educational and vocational training or medical care; (3) the kinds of sentences available; (4) the sentencing guidelines range; (5) pertinent policy statements of the sentencing commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* **18 U.S. C. § 3553**(a)(1)-(7). At least four of the enumerated factors mitigate in favor of a guideline or reduced sentence in this case. Consideration of these factors warrant a sentence of credit for time served followed by 6 months of home confinement and 3 years of probation.

**A. Mr. Lawson has a History of Good Character and a Strong Work Ethic.**

Mr. Lawson was raised by a very good family. (Ex. 1) He grew up in a loving and nurturing home. He attended Euclid Senior High School and graduated in June 2005. Mr. Lawson's school record did not show expulsions, suspensions or any other type of disciplinary issues. According to

2

the PSR, Mr. Lawson's mother described him as a "good and responsible child." PSR at ¶ 52. He was an above average student. After high school, he attended Cuyahoga Community College pursuing an Associate Degree in Recording Arts. His mother stated that she "encouraged a strong work ethic in Gerald at an early age." *Id.* His mother confirmed during the interview with U.S. Probation that Mr. Lawson routinely "worked two jobs at a time to support his three children and to pay child support payments." *Id.* The demands of his work schedule did not permit him to complete his studies. Mr. Lawson's lack of criminal history and extensive work history demonstrate that he has been a productive and non-violent member of his community.

**B. Mr. Lawson is a dedicated and Loving Father involved in his children's lives.**

Mr. Lawson is a dedicated and loving father to his three children, Iyannah (age10), Aiyah (age 9) and Gerald (age 4). (Ex. 1) He is actively involved in their upbringing and has been throughout their lives. Ms. Alycia Coleman, the mother of two of his children, described Mr. Lawson as "a good person and devoted and dependable father. PSR at ¶ 55. She acknowledged he provided care and financial support for his children prior to his incarceration. *Id.* She also confirmed that his absence during the term of pretrial incarceration has "been difficult for the children." PSR at ¶ 58. His incarceration has already begun to have a negative impact on his children. His young son was traumatized during the forced entry into their residence on the date his father was arrested.

The letters sent to the Court show that Mr. Lawson is a responsible and hardworking person, reserved but good spirited, kind, attentive, and helpful to others. (Ex. 2) He has strong family support, as well as support from the larger Cleveland community. Over the course of his life, Mr. Lawson remained law abiding and expressed none of the traits that one would expect to find in a person facing such serious charges. It goes without saying that Mr. Lawson has no prior

3

convictions for any criminal conduct. In fact, he had not been in trouble for anything in his life. Improper behavior of any sort was entirely contrary to his good character and kind intentions.

Deterrence is not a major factor in this case. Mr. Lawson was on the right path until this incident and he is eager to reclaim his life and get back on that path. He is remorseful for his actions and expressed sympathy for the families of the slain police officers. He expressed during the PSR interview that he "has respect for all law enforcement and mentioned that he has family members who are officers." PSR at ¶ 22. In further addressing his wrongful actions. Mr. Lawson stated, "He is saddened to be connected to this tragedy. He hates that he contributed to their deaths." *Id.* He has taken responsibility for his actions in this case. PSR at ¶ 20. Mr. Lawson's lack of criminal history shows his respect for the law and he addressed that directly during the interview with U.S. Probation. Based on Mr. Lawson's history, it is unlikely that he will commit any future crimes. Therefore, incapacitation to protect the public is not necessary in this case.

His involvement in this case was the result of a request made by an individual that he thought was a "friend" that requested him to purchase the firearm to allow him to protect his family. The government has sought to use statements made by Mr. Lawson on social media to suggest that he was supportive of Mr. Smith and his actions against the officers. It refers to paragraph 15 of the PSR to a posting made by Mr. Lawson before he was fully aware of Mr. Smith's role in the officers' deaths. The government refers to the posting as a "tribute." Nothing could be further from the truth. Mr. Lawson had heard rumors and attempted to reach out to Mr. Smith early on the morning of February 10, 2018. The government now seeks to use these out-of-context postings to suggest Mr. Lawson was giving a tribute to a cop killer. The actual purpose of the postings was to convey skepticism that the person he knew and grew up with would engage in

such behavior. After learning of Mr. Smith's actual role in the officers' deaths, he "deleted the post the same morning." PSR at ¶ 16.

Those statements were made when there was little information available to Mr. Lawson and there was what he perceived to be widespread false rumors and speculation regarding the circumstances surrounding the killing of the officers. In an effort to be supportive of an individual that he had known as a child and had worked with as a hip-hop artist, he posted the comments suggesting that commenters should reserve judgment. He did what he thought was supportive of a friend, as he had been taught as a child. During our discussions regarding why he posted the supportive statement, Mr. Lawson referenced *Proverbs 18:24*, which reads "one who has unreliable friends soon comes to ruin, but there is a friend who sticks closer than a brother." We also discussed *Proverbs 17:17* which reads "a friend loves at all times, and a brother is born for a time of adversity." These were the guiding sentiments for his post. After learning about Mr. Smith's role in killing the two Westerville police officers, Mr. Lawson completely repudiated the view he expressed, then deleted his social media post on February 10, 2018, the very same morning he posted it.

**C. Seriousness of offense and respect for the law are not compelling factors in this case based on Mr. Lawson's history and statements to U.S. Probation.**

Obviously, the offenses charged in this case are serious. Mr. Lawson's decision to purchase a firearm for Quentin Smith was a serious lapse in judgment. His actions were uncharacteristic of his prior behavior. Mr. Lawson renewed his relationship with Mr. Smith after discovering that Mr. Smith was working to develop himself as a music artist. He began to produce beats for Mr. Smith to use in his music. It was during one of these music production sessions that Mr. Smith first asked Mr. Lawson to purchase a firearm for him. He told Mr. Lawson that he was concerned for his own

safety because he was traveling by car between Cleveland and Columbus on a regular basis. He exploited his "friendly" relationship with Mr. Lawson to gain his trust and confidence. Unfortunately, Mr. Smith exploited Mr. Lawson in his effort to secure a firearm. Mr. Lawson is eternally sorry and ashamed that he aided Mr. Smith in securing the firearm Smith used to kill the two officers.

      **D.      The applicable guideline range in this case provides sufficient punishment for Mr. Lawson's actions in this case.**

There is little precedent in this District, or guidance across the country, in terms of comparable "straw purchase" cases for determining the appropriate sentence for Mr. Lawson's involvement in securing the weapon in this case. The guideline range calculated in his final presentence report is improperly inflated by the application of U.S.S.G § 2K2.1 (b)(6)(B). That actually increased his guideline range from 6-12 months (Total Offense Level 10, Criminal History I) without the 6 level increase assessed in paragraph 30 of the PSR. The defense has objected to the increase which raised his guideline range to 18-24 months (Total Offense Level 15, Criminal History Category I). The increase is unwarranted in this case because the transfer of the weapon from Mr. Lawson to Mr. Smith was done in May of 2017, and the gun was not used for any other criminal activity in the 10 months following its transfer.

In fact, there is no evidence to show that it was ever used for the commission of any crime by Mr. Smith. Unfortunately, Mr. Smith fired the weapon at the Westerville Officers in February 2018 when they responded to a domestic call at his residence. The government has tried to suggest, without credible evidence, that the gun was "used or possessed in connection with another felony offense. The sole purpose of applying the guideline enhancement is to inflate Mr. Lawson's guideline range from 6-12 months, up to 18-24 months. However, even this doubling of his

guideline range is not enough for U.S. Probation and the government. They have suggested that a sentence of 60 months should be imposed by the court, an increase of more than five times the upper limit of 12 months that Mr. Lawson faced with the correct guideline range of 6-12 months. It is ten times the low end (6 months) of the guideline range. The imposition of such a punitive and excessive sentence (60 months) is not supported by Mr. Lawson's history and characteristics, nor is it consistent with U.S. Sentencing Guidelines or the express goals of sentencing set forth in 18 U.S.C. § 3553(a).

> II. **The Court can, and should, consider racial disparity in federal sentencing in fashioning an appropriate sentence in this case.**

Congress has mandated that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. However, the court can and should consider sentencing disparity when possible as a part of its sentencing analysis in a specific case. In fact 18 U.S. C. 3553 (a)(6) specifically addresses a sentencing court's obligations regarding "the need to avoid unwarranted sentencing disparities." The imposition of the 60 month sentence recommended by U.S. Probation and advocated by the prosecutor would result in a significant disparity when considering the applicable guideline range.

The U.S. Sentencing Commission found that Black male offenders received longer sentences than similarly situated White male offenders. *See*, *Demographic Differences in Sentencing: An Update to the 2012 Booker Report*, United States Sentencing Commission, 2017[1].

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171114_Demographics.pdf

The report published in 2017 found that Black male offenders received sentences on average 19.1 percent longer than similarly situated White male offenders during the Post-Report period (fiscal years 2012-2016), as they had for the prior four periods studied. It also found that violence in an offender's criminal history does not appear to account for any of the demographic differences in sentencing.

Black male offenders received sentences on average 20.4 percent longer than similarly situated White male offenders, accounting for the violence in an offender's past in fiscal year 2016, the only year for which such data is available. The difference in Mr. Lawson's case, to account for the disparity in sentencing could be in the range of 54 months from the appropriate 6-12 month guideline range, to the 60 month sentence suggested by U.S. Probation. This increase is ten times what the low end of the guideline range identifies as an appropriate sentence. Given the sentencing factors detailed in this memorandum, there is no good reason to impose such a harsh and excessive sentence in this case. Mr. Lawson has already served more than 8 months in custody awaiting his sentence. All of the sentencing goals can be achieved by a sentence of time served (8 months) followed by six months of home confinement and three years' probation.

**A.     A similar sentence has been imposed by a U.S. District Court in a straw purchase case involving the killing of a police officer.**

A U. S. District Court in Atlanta imposed a similar, but even lower sentence, in *U.S. v. Johnson*, No. 1:15 –cr-00293, *(N.D.Ga.)* (Ex. 3), a similar case, involving the straw purchase of a weapon that was used to kill a police officer, Kerrie Orozco, in Omaha, Nebraska. Maggie O'Brien, *Police Oppose Probation Sentence Given to Buyer of Gun Used to Kill Kerrie Orozco*,

Omaha World-Herald (Nov. 4, 2015)[2]. In that case, the court considered the defendant's background, family support and lack of criminal history as major factors in its decision to impose a sentence of probation. Those same considerations are present in Mr. Lawson's case. Most of the 3553(a) factors support a reduced sentence in this case. Just like in the *Johnson* case, Mr. Smith convinced Mr. Lawson that he needed a weapon for personal protection.

**B.  The 18 U.S.C. § 3553(a)(1),(3),(4),(5) and(6) discussed in this memo all mitigate in favor of a time served sentence.**

The defense has addressed the 3553 (a) factors that support a sentence below the 60 months suggested by U.S. Probation and the prosecutor. Each of these factors weigh heavily in favor of a sentence within the applicable advisory guideline range. These factors speak to the question of whether the defendant will be a risk to the community of committing future crimes based on the nature of the present crime, and his future risk of recidivism. Guiding this analysis is the fact that Mr. Lawson has never been convicted of another crime, misdemeanor or felony, in his life. He has been a good citizen and father. His potential future dangerousness is not really an issue the Court must consider, but his history of nonviolence, coupled with his remorse and work history all suggests there is no need for further incarceration of Mr. Lawson. Of the sentences available to the court, the guideline range is sufficient to punish Mr. Lawson and to address the goals of sentencing. Imposition of a guideline sentence of 8 months followed by 6 months of home confinement and 3 years' probation will reduce the likelihood of his involvement in similar conduct in the factors.

It is unlikely Mr. Lawson will reoffend. Counsel requests that the Court take into consideration Mr. Lawson's history and characteristics, including his remorse for his actions, his

---

[2] Available at https://www.omaha.com/news/crime/police-oppose-probation-sentence-given-to-buyer-of-gun-used/article_dcd60ace-8716-5651-9125-cb297998694e.html

substantial work history, his family/community ties and lack of any criminal history in formulating the appropriate sentence in this matter.

### III.    Conclusion

In sum, Mr. Lawson submits that the 60 month sentence recommended by U.S. Probation in the presentence report, and suggested by the prosecutor, is excessive and inconsistent with the goals of sentencing set forth in 18 USC 3553(a). Counsel asserts that an appropriate sentence in this case is credit for time served (8 months), followed by 6 months of home confinement and 3 years of probation. This adequately accounts for the factors under § 3553(a), and the sentences of similarly situated defendants in similar cases, as well as avoiding unnecessary sentencing disparity in this case.

Respectfully submitted,

*s/ George Chaney, Jr.*
George Chaney, Jr. ( LA 22215)
Assistant Federal Public Defender
10 W. Broad Street, Suite 1000
Columbus, Ohio 43215
(614) 469-2999
Attorney for Defendant, Gerald Lawson

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon Noah Litton, Assistant United States Attorney, via Electronic Case Filing, on this day of filing.

*s/ George Chaney, Jr.*
George Chaney, Jr.